MARVEL BUCKLE CO. et al. v. ALMA MFG. CO. et al.

(Circuit Court, D. Maryland. June 27, 1910.)

1. PATENTS (§ 141*)—REISSUE—IDENTITY OF INVENTION.

A patentee is not entitled to claim in a reissue a feature of the device not claimed in the original patent as a part of his invention, although it was incidentally shown or indicated in the drawings.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 206–213; Dec. Dig. § 141.*]

2. PATENTS (§ 328*)—VALIDITY OF REISSUE—BUCKLE.

The Barabasz reissue patent, No. 12,855 (original No. 877,035), for a single piece sheet metal buckle, is void; the claims being for a different invention from that claimed in the original patent.

In Equity. Suit by the Marvel Buckle Company and M. Barabasz against the Alma Manufacturing Company, H. Kerngood, president, I. Blum, vice president, M. Hecht, of J., secretary, and S. B. Sonneborn, treasurer. Decree for defendants.

Morris A. Soper and A. V. Cushman, for complainants.

Sylvan Hayes Lauchheimer, Livingston Gifford, and Charles F. Jones, for defendants.

ROSE, District Judge. The individual complainant is the inventor to whom reissued letters patent 12,855 were granted September 22, 1908. He still owns them. The Marvel Buckle Company is a corporation. It holds an exclusive license under such patent. The bill says that the defendants infringe its second, fifth, and sixth claims. A number of defenses were set up. The original patent, 877,035, dated January 21, 1908, and its reissue in suit, are each for an improvement in single piece sheet metal buckles.

The respondents have put in evidence 53 prior patents. Forty-nine of these relate to single piece buckles. Numerous witnesses have told about buckles made and used before the application for the original of the patent in suit. Many specimens of such buckles have been filed as exhibits. The respondents say that, in view of the prior state of the art thus shown, there was no invention in anything which Mr. Barabasz claims to have done. They assert that all the new things in his buckles are both obvious and trivial. It is agreed that at the time of his application the buckle art was already overcrowded. I am inclined to believe that Mr. Barabasz's changes and adaptations are not inventions. It is, however, not necessary so to decide, nor indeed to consider, more than one of the defenses relied on.

The invention set forth in the claims in suit, if it be an invention at all, is in my opinion a different invention from that of the original patent. If I am right, the bill must be dismissed. I shall briefly state the reasons which lead me to this conclusion. In the original patent Mr. Barabasz stated that he had invented two things—a peculiarly shaped buckle tooth for the purpose of lessening the wear on the strap used with the buckle; second, a depressed crossbar in

the buckle, the object of which was to prevent a hump in the strap when passed through the buckle. The patent gives no hint that the inventor had anything else in mind. Such a shaped tooth was not new. A depressed crossbar was not new. It is admitted that the respondents never have used the peculiar Barabasz tooth. Indeed, the inventor and his licensee do not appear themselves ever to have used it in the buckles made by them for sale. They certainly no longer use it. Some of the defendants' buckles which the complainants say infringe have neither the peculiar tooth nor the depressed crossbar. In those buckles the teeth still tear the strap. The strap still forms a hump.

The complainants say that such buckles infringe their rights because the real invention is to be found neither in the tooth nor in the bar, but in something else and different. In their brief they assert that Mr. Barabasz had been trying for years to produce a buckle which could be blanked and formed from sheet metal in a single piece, and of such construction that the buckle would "stand the work of finishing in manufacture (tumbling in a rumble); and, second, the action of the power pressing iron such as is used by wholesale clothing manufacturers, without such percentage of breakage as would render their manufacture and use an uncertain commercial venture." Mr. Barabasz, who is a priest of the Roman Catholic Church and the rector of the Church of the Holy Rosary in Baltimore City, has for years, it is true, been working on buckles. The original of the patent in suit is the fifth buckle patent which has been granted him. In not one of the five is there a hint or suggestion that he was seeking a buckle that would withstand the rough usage of the rumble and the pressing iron. This purpose first appears in the application for the reissued patent in suit. Mr. Barabasz then, and not until then, told the Patent Office that a material part of his original invention was a discovery that a buckle could be made in which the tooth and crossbar or bars were all housed within the ends and side bars and within the inturned flanges of such ends and side bars. It is true that in the buckle shown in the drawings of the original patent the teeth and crossbar were housed within the end and side bars and their inturned flanges, but, so far as the patent shows, no importance was attached by the inventor to that detail of the construction. In the reissued patent this feature is made an element of each of the three claims in suit.

Before the application for the reissue, the respondents had put on the market buckles which were very similar to the buckles shown in the original Barabasz patent 877,035, except that none of these buckles had the peculiarly shaped teeth of that patent. Respondents called one of these buckles the "Wonder." As always in this class of cases, they assert that the name was chosen without thought that it was a synonym for "Marvel." Quite as naturally the complainants believed and believe that the name was selected with that thought and none other. For the purposes of this case it may be assumed that the complainants are right in this matter. It does not follow that a reissued patent can be sustained merely because the alleged infringers have done things inconsistent with the maintenance of a

'highly. ethical ·standard of conduct. If the fact be that much they 'have done is open to criticism in a forum of morals, this case in that, as in other respects, much resembles Parker & Whipple Co. v. Yale Clock Co., 123 U. S. 87, 8 Sup. Ct. 38, 31 L. Ed. 100. There, as here, the drawings of the original patent showed the feature upon which were based the new claims first appearing in the reissued patent. There the infringer was the very corporation which had been employed by the owner of the original patent to manufacture the patented clocks. No alleged infringer could well have put itself in a position less likely to appeal to the sympathies of the court. It was, however, held:

"That what was suggested or indicated in the original specifications, drawing, or Patent Office model is not to be considered as a part of the invention intended to have been covered by the original patent unless it can be ·seen from a comparison of the two patents that the invention which the original patent was intended to cover embraced the things thus suggested or indicated in the original specifications, drawings, or Patent Office model, and unless the original specifications indicated that those things were embraced in the invention intended to have been secured by the original patent."

That case is decisive of this. The subsequent case of Topliff v. Topliff, 145 U. S. 170, 12 Sup. Ct. 825, 36 L. Ed. 658, quite as distinctly declares that a reissue must be for the same invention as the original patent, as such invention appears from the specifications and claims of such original.

In this case each of the three claims in suit contain an element which from the specifications and claims of the original patent cannot be said to have formed a part of the invention there described and claimed.

I will sign a decree dismissing the bill of complaint.