WEBER v. AUTOMOBILE & ACCESSORIES MFG. CO.

(Circuit Court, D. Maryland. July 5, 1911.)

**1. Patents (§ 238\*)—Infringement—Change in Form of Construction.**
Infringement of a patent is not avoided by making in one piece what the inventor made in several, when in practical operation it makes no difference whether one form of construction or the other is used.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 376; Dec. Dig. § 238.\*]

**2. Patents (§ 141\*)—Reissues—Validity.**
A reissue is not necessarily void because it contains broadened claims or claims which more accurately and precisely cover the invention as described in the original patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 206-213; Dec. Dig. § 141.\*
Grounds for reissue of patent, see note to General Electric Co. v. Richmond St. & I. Ry. Co., 102 C. C. A. 145.]

**3. Patents (§ 328\*)—Validity and Infringement—Automobile Truck.**
The Weber reissue patent, No. 12,430 (original No. 772,014), for an automobile truck, *held* valid and infringed.

**4. Patents (§ 314\*)—Suit for Infringement—Order of Proof.**
That the complainant in a suit for infringement of a patent did not prove the marking of the articles made under his patent until his rebuttal testimony will not deprive him of the right to an accounting where the fact was undisputed, and the delay not prejudicial to defendant.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 314.\*]

In Equity. Suit by Herman Weber against the Automobile & Accessories Manufacturing Company. On final hearing  Decree for complainant.

*For other cases see same topic & § Number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

C. A. Snow & Co. and Richard Bernard & Son (C. E. Doyle and W. H. C. Clarke, of counsel), for complainant.

William Nevarre Cromwell, for defendant.

ROSE, District Judge. This is a suit for infringement of reissue patent No. 12,430, January 2, 1906. It will be called the reissue. The original patent was No. 772,014, October 11, 1904. It will be called the original. The complainant, Herman Weber, lives at Colorado Springs, Colo. He is the patentee. He will be called the plaintiff. The defendant is the Automobile & Accessories Manufacturing Company, a Maryland corporation. It has a regular and established place of business in Baltimore, in this district, and there committed the acts charged to be infringements. It will be called the defendant.

The alleged infringing device originated with one John E. Norwood. At or about the time at which he says he conceived the idea he organized a company known as the Auto Supply & Storage Company. This company he controlled. Plaintiff filed a bill against it for infringing his reissue. The Auto Supply & Storage Company went into receiver's hands while the suit was pending. It was wound up by receivers and the defendant was thereupon organized. It is also controlled by Norwood. It bought the business of the Auto Supply & Storage Company. It made and used Norwood's device. Plaintiff brought this suit.

The patented thing is a small truck. It is to be used in handling automobiles where there is not room enough to move them by their own machinery in the way in which you want them to move. For brevity an automobile will be called a car. In a small or crowded garage, on docks and wharves, or the decks of vessels, on station platforms, or in freight cars it is often desirable and frequently necessary that cars shall be moved in a direction other than forward or backward. There is use for a cheap, simple, light, and easily handled tool for doing this work. The thing to be used must be readily movable in any direction. Plaintiff put his truck on casters. When not in use, it must take up little room. Car wheels are usually independently mounted. A truck which would hold more than one wheel would be large, heavy and complicated. There would be little call for a truck which could not be handled by one man. Plaintiff's truck will hold but one car wheel. Within a considerable number of degrees car wheels turn easily. Plaintiff's truck holds a car wheel in substantially a fixed angle to the load-supporting portion of the truck. The truck will be useless for the purpose if the car wheel can be pulled off of it sideways. Plaintiff's truck has a wheel-supporting channel deep enough to prevent anything of the kind. To make it useful, one man without the aid of other appliances must be able to place a car wheel upon it. Plaintiff's truck has a projecting inclined plane up which the car wheel can be readily moved. The truck must be one out of which the car cannot without the will of the operator easily roll either forward or backward. Plaintiff dishes the platform of his truck so that when the car wheel settles down upon it gravity holds it firmly. The truck must be one which will not let the car turn over, or which will not itself tilt up. Plaintiff places the load-supporting platform of his truck adjacent to the floor, so that the weight will not rest upon a plane above that of the casters.

The truck is a simple thing. It meets the obvious necessities of the situation. It is easy to say that its way of meeting those necessities is as obvious as the necessities themselves. Defendant does say it. Its answer cites 66 prior patents. Its expert comments on 32 of them. Those discussed include patents for roller skates, sewing machine and stove leg casters, sled runners, garbage carts, see-saw lifting jacks, and barrel, sleigh, baggage, rocking chair, grain binder, and vehicle trucks. As the sum of many hours of testifying and of many pages of recorded testimony, the same very accomplished expert concludes that the nearest anticipation to the claims of plaintiff's reissue is to be found in a patent for casters to be permanently screwed on each leg of a sewing machine. No one other than a highly trained patent expert would be likely to seek for an anticipation of a movable truck for a car wheel in a fixed caster and frame intended to be screwed permanently on the foot of a sewing machine. Before the plaintiff had made his truck, it is not probable that anybody, not even the patent expert, would have gotten any light on how to make it from a most careful study of a sewing machine caster. The court is much indebted to Mr. Greeley's study of the art. After reading what he has to say, it is possible to feel certain that every reference which could anticipate or limit the claims of the plaintiff has been found and cited. The sewing machine caster is the net result. Under such conditions there can be little question of the novelty of plaintiff's device. Defendant's failure to find any more pertinent reference in the prior art is sufficient answer to its contention that the claims of the reissue are too broad. Both sides have proved that there was great need for such device. Before it came upon the market all sorts of inconvenient, troublesome and objectionable expedients were resorted to. Oil was poured on the floor to make easier the sideways dragging of a car over it, a piece of scantling was used to pry the car over, and so on.

Plaintiff's trucks were put upon the market in 1904. There was at once a wide-spread demand for them. Inquiries and orders came from all sections of the United States and from many European countries. Plaintiff testified that he had sold 6,000 of them. He says defendant infringes the first, second, and third claims of his reissue. Defendant says it infringes none of them. The first claim is for "a truck comprising (1) casters, (2) a drop-frame extending transversely of the truck and connecting the casters, (3) said frame being permanently secured to and serving to maintain the casters in fixed relative positions, (4) and a fixed load-receiving platform supported by said drop-frame." The casters are found in plaintiff's and defendant's truck alike. In each of them a drop-frame extends transversely of the truck and connects the casters. In each of them that frame maintains the casters in fixed relative positions. In each of them there is a fixed load-receiving platform. In each of them that load-receiving platform is supported by the thing which also connects the casters. The only difference is that defendant makes the whole of its truck, except the casters, out of one piece of metal. Plaintiff usually makes his truck out of several pieces of wood or metal. Defendant's expert admits that if plaintiff's claim can be read upon a truck, all of which is made

in one piece, defendant's truck infringes; There is nothing in the claim that expressly negatives the making of the truck in one piece. Defendant's expert, to justify his contention that the claim requires °the truck to be made in several pieces, goes into minute questions of punctuation. He reviews the history of the prior art, and asserts that, if the claim is to be so construed as to include a single piece truck, it is anticipated by the sewing machine casters. Such limitation upon the ordinary import of the language of this claim does not seem to be justified either by its punctuation or by anything in the prior art. He argues that the plaintiff's claim necessarily implies a drop-frame which is no part of the load-receiving platform. He admits, as, of course, he must, that before the truck can be put in use the load-receiving platform must be firmly secured to the drop-frame. He does not say that it makes any difference whatever in the way in which the truck is used—whether it was originally made in one piece or several pieces.

[1] It is scarcely necessary to cite authorities to the effect that infringement cannot be avoided by making in one piece something that the inventor made in several, when in practical operation it does not make the slightest difference whether one form of construction or the other is adopted. Such contention may be dealt with as briefly as it was by the Circuit Court of Appeals for the Second Circuit in Capital Cash Register Co. v. National Cash Register Co., 70 Fed. 709, 17 C. C. A. 355.

It is unnecessary to quote the plaintiff's second and third claims. It is admitted that those claims are infringed if infringement cannot be escaped by making in one piece that which patentee made in several. How unsubstantial the contention that there is any difference whether the machine is made in one piece or in three is demonstrated by this record; Norwood has made his truck in several pieces and in one piece. Plaintiff has made his truck in one piece and in several pieces. The defendant claims that it is making its truck under a certain patent issued to Norwood. This patent is junior to that of the plaintiff. It may contain some improvements or additions to the plaintiff's patent. That will not justify the defendant in using what is plaintiff's. Morley v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, 32 L. Ed. 715.

Defendant says plaintiff's reissue is for a different invention than that described in his original patent. If that be true, the reissue is void. It does not appear to be true. Every element claimed in the reissue is clearly shown in the original. A drop-frame and drop-frame bar in the sense and in the connection they are used in the original and the reissue mean the same thing. They are described and their use pointed out in the original as clearly as in the reissue. A loading-member extending from one end of the platform proper to a point beyond the casters is shown in the original. The use to which it is to be put is there told. One form of such loading-platform is claimed in the original. The original distinctly specifies that the bends of the frame bars shall be disposed adjacent to the floor or the ground in order to facilitate the positioning of the vehicle upon the structure. This arrangement of the bars involves the same form of construction which is described in the third claim of the reissue as a "dished load-receiving

surface disposed approximately in the horizontal plane of the revoluble elements of the casters."

Defendant relies upon Marvel Buckle Co. v. Alma Manufacturing Co. (C. C.) 180 Fed. 1002. There in his original patent the inventor said he wanted to make a buckle that would not tear a trousers strap, and would not form a hump. In his reissue he claimed a buckle which was less liable to be broken in the process of manufacture. This, it was held, he could not do. In the case at bar the plaintiff in the original described a truck intended to support and move a car wheel. The precise construction of the truck is both told and shown. How and why it is to be so made is set forth. Some of its characteristic features were not embodied in precise language in the original claims.

[2] A reissue is not necessarily void because it contains broadened claims, or because it contains claims which more accurately and precisely cover the invention as described in the original patent. Crown Cork & Seal Co. v. Aluminum Stopper Co., 108 Fed. 845, 48 C. C. A. 72.

[3] A period of seven months elapsed between the original and the application for the reissue. Defendant says Norwood acquired rights in that time of which the reissue cannot deprive him. It says it has succeeded to those rights. The defendant has failed to prove beyond reasonable doubt the existence of the facts upon which such rights rest. Assuming, however, that all the testimony it has given on this subject is true, what happened was this: About two months before plaintiff applied for his reissue Norwood made two trucks. In those trucks the frame bars and the loading platform were made separately, and they were afterwards fastened together. Norwood was then about to organize the first of his companies. The company was formed for the purpose of manufacturing, buying, selling, hiring, storing, repairing, and conducting generally the wholesale and retail business of trading and dealing in automobiles and automobile supplies, and conducting and carrying on the business of delivering and transferring of merchandise, parcels, etc., and the business of conveying passengers for hire in automobiles and otherwise, and for buying, selling, and dealing in patents and patent rights, and for buying, selling, mortgaging, leasing, improving, disposing of, or otherwise dealing in lands in Maryland. One gentleman testified that he became an incorporator and stockholder in this company, and that Norwood at the time he asked him to go into the company showed him one of these trucks, and told him that he would let the company manufacture it on a royalty. The witness thought it would be valuable. This company was formed in the latter part of March, 1905. The only Norwood trucks then in existence, or which up to that time ever had been made, or which were made at any time before the plaintiff applied for his reissue, were two. Norwood says that any bargain he had with the company as to these trucks was verbal. He thinks they paid him 50 cents apiece for the right to use them; that is, $1 in all. No more trucks were made by Norwood or by anybody under his design until the end of July, 1905. That was two months after the reissue had been applied for. These trucks were made a few days after Norwood had written to the plain-

tiff for a description of plaintiff's trucks.   None of the Norwood trucks were sold to anybody else until the latter part of 1905 or early in 1906.   If the defendant or Norwood have any intervening rights, they rest upon the above facts, and upon no others.

In the case of the Crown Cork & Seal Co. v. Aluminum Stopper Co., supra, the alleged infringer, Hall, had actually applied for his patent before the issue of the Painter original patent, and nearly two years before the application for reissue.   Much had been done by Hall and his associate, Keizer, and by the Aluminum Stopper Company they formed to develop this invention.   Much money had been spent on it and many stoppers put upon the market.   What was done by Norwood cannot be seriously compared with what was done by Hall.   The Circuit Court of Appeals for this circuit decided that all that Hall had done had not given him any rights which enabled him to escape from the charge of infringing the Painter reissue.   The validity of the reissue patent in this case has been already once adjudicated in the United States Circuit Court for the District of Colorado in the case of Herman Weber v. Pikes Peak Mfg. Co. & Stean B. Mansfield (no opinion filed).   The defendant contends that the prior state of the art was not laid before the court in that case, and that no such vigorous defense as has here been made was there set up.   I have accordingly dealt with the record here as if there had been no prior adjudication. Having so done, I have reached the same conclusion as Judge Lewis did in that case.

[4] The defendant says that in any event there can be no decree for an accounting.   Plaintiff did not in his direct testimony prove that his devices were marked "patented," or that he gave notice to the defendant to cease infringement.   Such facts were developed during plaintiff's cross-examination of defendant's witnesses, and were proved by plaintiff when offering his testimony in rebuttal.   Plaintiff should have given this evidence in chief.   Defendant has not asked permission to show that the facts are not as plaintiff in rebuttal claims them to be. That the proper evidence on this subject was not given by the plaintiff in his opening was obviously an oversight.   It takes something more than the failure of a solicitor to prove an undisputed fact at the right time to justify a court of equity in forfeiting important rights.   If anybody has been prejudiced by the mistake, the party responsible must stand the consequence.   In this case there seems to have been no possible harm to anybody.   Upon application at any time the court would have given permission to plaintiff to offer the necessary proof. It is immaterial that it was offered without asking permission.

There will be a decree for an injunction and an accounting in the usual form.