**WACHS et al. v. BALSAM.**
**No. 177.**

Circuit Court of Appeals, Second Circuit.
Feb. 3, 1930.

Abraham Chaice, of New York City, for appellants.

Hoguet & Neary, of New York City (Daniel L. Morris, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and MACK, Circuit Judges.

L. HAND, Circuit Judge.

The patent in suit is for a machine to crimp metal clips upon the corners of flexible pocketbooks and the like. The specifications disclose a base upon which the pocketbook is laid with the clip already loosely in place upon the corner. By means of mechanism not necessary to describe in detail, a V-shaped member descends vertically upon the material, and holds it immovable upon the base, leaving the metal corner exposed beyond its edge. Next, a second V-shaped member horizontally approaches the clip along the base, and pushes it firmly into place between itself and the edges of the holding member. Finally, a third V-shaped crimping member descends between the first two and distorts the metal of the clip, so as firmly to anchor it upon the material.

The defendant's machine is a later adaptation of an earlier one, which clearly infringed. In it the pocketbook is placed upon a metal base with the clip already in place, as in the disclosure. A holding member descends vertically, holding it upon the base against lateral deflection in its own plane; it has, however, a straight, instead of a V, edge, so that it does not cover the material close to the clip, but forms the third side of the triangle, of which the clip forms the other two. At some distance along the base is a stationary V-shaped abutment, like that of the patented disclosure, above and inside of which is a V-shaped crimping member, which descends at the proper time. Instead of advancing the abutment to press home ("flush") the clip upon the corner, the pocketbook and clip are pushed along the surface of the base to meet the abutment.

This can be done, because the vertically descending member is a spring bent inwards towards the abutment. After its descent is stopped by the material on the base, further pressure creates a lateral thrust inward, strong enough to overcome the friction, and move the work along the base. The movement so resulting continues until it is stopped by the abutment, the recess in which receives the corner of the pocketbook armed with the clip, which is thus "flushed," preparatory to being fixed by the descent of the crimping member. Thus the modification is entirely in the holding member and the abutment.

While the first descends vertically, its foot by its own resiliency moves laterally, and it is not V-shaped, as, of course, it cannot be, if it is to operate as a spring. The second is fixed, but in form like that of the disclosure.

It is at once apparent that the defendant has reversed the motion of the parts, which must approach in operation, and that this, with the exception of the change in the form of the holding member, is all that he has changed. The result is precisely the same, and the means differ only in the mechanism of the approach, for we need not labor the proof that motion is relative, and that it makes no difference to which of the two approaching members we refer the standard of repose. International Banding Machine Co. v. American Bander Co., 9 F.(2d) 606, 611 (C. C. A. 2); Reece, etc., Co. v. Globe, etc., Co., 61 F. 958 (C. C. A. 1); Anchor Cap & Closure Co. v. Pritchard (D. C.) 232 F. 156, 159. The means of approach are, however, different, and infringement depends, first, upon how far the claims circumscribe the generality of the idea, and, next, upon whether, if they admit without too much violence so much latitude, the prior art presses too closely about the specifications to allow so much.

The important elements, as defined in the claims, are therefore the holding member and the abutment. In the claims 1 and 2 the first is defined as a "means for holding the material against relative movement on the base"; in the next four, as "a gripping member movable into engagement with said article for holding the same immovable on the base." Whether anything different was intended by the phrase "against relative movement on the base" from "immovable on the base," it is hard to say as mere matter of verbal construction. The first is more general, though, literally, "relative" would include motion of any sort, and in any other legal document than a patent claim it might have to be so understood. However, the contrast in expression ought to have some significance, and we are not disposed to identify the two. Patents speak to the mechanic arts, and their language is not limited to the specifications, or to the meaning of the words used, even in their utmost verbal comprehension. As a means of defining the area of the monopoly, they are to some extent illusory, as we have had occasion recently to say. Neon Lights Co. v. Machlett, 36 F.(2d) 574. How far is a matter which no man can say in advance; all "inventions" have a penumbra which depends largely upon the cross-lights of the prior art.

We think that "relative" in the first two claims may without too great distortion be measured by the mechanical conveniences of the occasion; that it may be read as no more than that the work shall be held fixed upon the base to resist any displacement which might throw it out of registry with the abutment at the time of its engagement with the clip, and such pressure as may be necessary to "flushing." This the holding member does; to us it appears to be, pro tanto, "substantially the same means," the accredited test in such cases.

■ The second element is so generally described as to present no verbal difficulties. In the first two claims it is: "Means for advancing said element to dispose and hold the bight portion flush with the outer edge of the material." This may cover either an advance of the work to the abutment, or of the abutment to the work. True, this element is distinguished from the holding member, and so the disclosure requires. Strictly, the defendant has subdivided it into two parts, the abutment, which he keeps immovable, and the spring, which advances the clip towards it. The holding member is made to accomplish the advance; the abutment, to give the resistance. Such a redistribution of identical function among the elements of a claim has repeatedly been held irrelevant upon the issue of infringement. Gibbs v. Triumph Trap Co., 26 F.(2d) 312 (C. C. A. 2); Grupe, etc., Co. v. Geiger, Fiske & Koop, 215 F. 110 (C. C. A. 8); Nathan v. Howard, 143 F. 889 (C. C. A. 6); Capital, etc., Co. v. National, etc., Co., 70 F. 709 (C. C. A. 2); Bundy Mfg. Co. v. Detroit, etc., Co., 94 F. 524, 538 (C. C. A. 6); Weber v. Automobile, etc., Co. (C. C.) 190 F. 189, 192; Hall-Mammoth Incubator Co. v. Teabout (D. C.) 205 F. 906, 912, 913. Underwood Typewriter Co. v. Royal Typewriter Co., 224 F. 477 (C. C. A. 2), does indeed contain a contrary intimation, but it is to be confined to the situation there at bar. No doubt a claim does not cover anything which omits one of its elements, but that is another matter; all the elements of claims 1 and 2 are included in the defendant's machine.

The only remaining question is whether the art hedged about Wachs' disclosure so closely that he must be literally held to his words, or at least more literally than will give him the necessary scope. We select Kraus as the most dangerous reference, because the defendant puts it forward as such. It shows, what other disclosures also show, that the sequence of operations—holding, "flushing,"

and crimping—was old, and nobody could get a patent on it, except as his means were new. Kraus, who was tipping corset stays, advanced these between rollers, and "flushed" the tips by a resilient stop, through which they passed to rollers, which crimped the tips in place. Verbally, the first two claims are distinguished by the fact that the crimping means is not "movable towards the base"; but we do not rest upon that. Just as the claim will expand to cover more than its literal language, so it is not invalid because, literally, it comprises the prior art. Such are the liberties which courts take with it, in the interest of securing the underlying combination which the inventor has realized in material form. Kraus' whole apparatus was organized quite differently; nobody could approach the defendant's machine by means of it. The most he could get from it was the bare statement of the problem, plus the notion of a resilient "flushing." This last is not a part of the claims, and whether the improvement is patentable we need not consider. The other references are too far afield to justify discussion.

 We agree with the District Judge that there was enough room for honest difference of opinion to preclude any punishment as for a contempt. Once a patentee must have recourse to equivalents, his pretensions are usually too uncertain for peremptory disposition.

Decree denying the motion to punish for contempt affirmed; decree denying an injunction reversed; and injunction granted under claims 1 and 2.