NATIONAL DEVELOPMENT CO. v. LAWSON-PORTER SHOE MACHINERY CORPORATION.

Civ. A. No. 148.

District Court, D. Massachusetts.
March 10, 1941.

George P. Dike, Cedric W. Porter, and George P. Towle, Jr., of Dike, Calver & Gray, all of Boston, Mass., for plaintiff.

L. G. Miller and James R. Hodder, both of Boston, Mass., for defendant.

SWEENEY, District Judge.

The plaintiff seeks an injunction and an accounting growing out of an alleged infringement of its patent No. 1,829,800. The defendant denies the validity of the patent unless its claims are so limited, in view of the prior art, that the defendant's apparatus does not come within the scope of the claims, and further denies infringement. A supplemental bill filed by the plaintiff has been disposed of by consent. The claims in suit are numbered 1, 2, 3, 13, 14, 16, 18, 19, and 30.

### Findings of Fact.

Title to the patent is conceded to be in the plaintiff. It covers an edge setting machine designed to be used in the shoe industry. In the operations involved edge setting occurs when a leather toplift is attached to the wooden heel of a shoe, and consists of burnishing, with a heated iron, the rough edges of the heel and toplift, and rolling the material into the joint between the toplift and the heel to close it, and make the surface of the heel and the toplift smooth and continuous so that it will appear that the toplift and heel are one.

Prior to the plaintiff's invention all edge setting was done by hand operated machines or tools. This was the first automatic edge setting device, and was a vast improvement over the former practice, since it not only provided for much faster edge setting, but it produced a uniform product since the force or power utilized did not vary as it would in a hand operated device, dependent for its force on the human effort put into the operation. After its production the machine was immediately accepted by the trade, and soon completely eliminated the hand operations.

The plaintiff's apparatus briefly consists of a main operating shaft geared to the heel jack shaft, on which the heel clamping and positioning device is mounted. The jack shaft is caused to oscillate in a U-shaped stroke about a stationary edge setting iron. It makes four complete oscillations, and through permissive gearing, then remains idle during one revolution of the main operating shaft, while the heel clamp is released, the iron raised, the finished heel withdrawn, and a new heel inserted. During the first oscillation of the jack shaft, the iron is tilted so as to "roll in" the joint between the toplift and the heel. In the successive oscillations the iron is returned to normal position, and then moulds and provides the bed and bead of the heel.

The claims of the patent which are involved in this action divide themselves into two groups. Claims 1, 2, and 3 cover the "roll-in" operation, and the rest of the claims cover the heel positioning and clamping mechanism. The plaintiff's positioning and clamping device consists of a toplift plate against which the toplift rests. Opposite it is an adjustable heel seat support which is adjusted to an angle to conform to the angle of the heel seat portion of the heel. Attached thereto are interchangeable heel seat centering plates. These are in various sizes to conform to the different widths of the heel seats to be worked on. Both the heel seat support and the heel seat centering plate conforming to the angle of the heel seat portion of the heel act as a guide to the operator in inserting the heel and placing it in the jack in such a position that the face of the toplift is perpendicular to the axis of oscillation and rests against the toplift stop plate. As a matter of practice the operator of the plaintiff's device does not use the heel seat centering plate, but positions the heel by sense of touch so that the axis of the heel and the axis of oscillation are identical. When thus properly positioned, spurs are forced into the heel seat so as to engage it securely. Proper positioning and clamping are necessary, for, during the oscillation and contact with the edge setting iron, controlled pressure and exact direction of such pressure are necessary in order for the machine to perform its proper function.

The alleged infringing device consists of a machine with an oscillating wheel from which projects a movable burnishing iron. In the center of the wheel is the toplift seat. Beneath it, to the right and apart from it, is a breast plate which is adjustable. Opposite the toplift seat, and beyond the breast plate is a convex surfaced angularly adjustable plate which the defendant utilizes as a guard so that the operator will not have his fingers caught on the two projecting points which later engage the seat of the heel. When the toplift is placed against the toplift seat and the breast of the heel is positioned on the breast plate, there is no necessary engagement between the heel seat and the guard-plate above referred to until the jack is closed. This occurs at the beginning of the operation, when the guard-plate moves forward towards the heel seat in unison with the points or spurs. The surface of the guard-plate being convex and the engaging points being near the outer edges of the guard-plate, it is possible for the points to engage the heel seat without the guard-plate being in contact with the heel seat over its entire surface.

After the heel is engaged by the heel seat points, and is resting on the breast plate and against the toplift seat, and firmly clamped, it is subjected to pressure from the edge setting iron which oscillates about the heel. During the first oscillation of the iron the edge setting iron tips forward, thus accomplishing the "roll-in" operation.

The breast plate on the defendant's machine provides a resting place for the heel, and in conjunction with the toplift seat positions the heel so that the toplift face is perpendicular to the axis of oscillation and the proper operation may occur. It is difficult to see what positioning function the guard plate can exercise when the heel is first placed in the machine since it is separated from the heel seat at the beginning of the operation. The best positioning would not occur by placing the heel seat against this guard-plate, but as outlined above. However, it is noted that when the points engage the heel seat this operation does not occur by merely moving the points forward, but occurs by moving the guard and the points in unison. Thus, while the points engage the heel seat some portion of the guard-plate necessarily comes in contact with the heel seat. This is not a positioning device, but is part of a clamping device. In other words, the guard-plate does not assist in guiding the heel into proper position or in positioning it, but it does assist in clamping the heel seat securely after positioning so that when the edge setting iron exerts pressure on the heel it is firm. With the heel in proper position the edge setting iron oscillates around the heel edge, and functions much the same as plaintiff's device, except that the parts are reversed. By this I mean that whereas the plaintiff's device provides oscillation of the heel about the iron, the defendant's device provides for oscillation of the iron about the heel. In addition to the operations performed by the plaintiff's invention, the defendant's device performs one other; that is, the breast setting operation.

The fact that the plaintiff's device was the first automatic edge setting machine entitles it to a fairly broad construction of its claims. Its device did not result from the mere application of power to the old hand device as argued by the defendant, but called for a patient and careful co-ordination of many old mechanical principles to bring about a novel and useful method of manufacturing wooden heels. It filled a long needed want, and provided a great improvement, and a resultant saving in the manufacture of wooden heels. I find as a fact that the plaintiff's device was the result of the application of inventive skill, and that its claims are entitled to a range of equivalents commensurate with its scope of invention. Mathey v. United Shoe Machinery Corporation, D.C., 32 F.Supp. 684; Eibel Process Co., v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523.

### Roll-In Operation.

Claims 1, 2, and 3 are involved in this operation. The defendant argues that Addy No. 356,911, dated February 1, 1887, showed an edge setting machine in which the iron is automatically rocked, and that the plaintiff's device is limited in view of Addy to a rocking about the joint between the toplift and the heel, and that defendant's device does not "rock about the joint between the toplift and the heel", but about a center remote from both the iron and the lift with which it is in contact. Addy does not disclose an edge setting machine in the sense in which the term is used in the plaintiff's patent, but discloses a machine whose only function was to burnish or polish, with a heated iron, the rough and fibrous edges of the heel lifts or

layers that composed the heel at that time. In a broad sense the term "edge setting" might include an operation such as Addy's machine performed because he did set edges, but it is not clear whether his burnishing and polishing accomplished this result by wearing away the rough edges of the lifts or by merely pressing them against the side of the heel and moulding them into the heel and the polish. But there is nothing to indicate that his machine performed a "roll-in" operation, or that he made such claim. If it occurred he was probably ignorant of it. He made his mechanism adjustable both to polish the entire surface of a curved heel, and also "so that the burnishing-tool may be made to bear upon and polish uniformly heel-edges of varying sizes and shapes." (Addy, page 1, lines 22–25.) Hawkins No. 127,414 was to the same effect. There was no attempt on the part of Addy or Hawkins to do the thing accomplished by the plaintiff's invention. Addy therefore does not operate as a limitation on the plaintiff's device. The distinction between the two is that Addy's device rocked about the entire surface of the heel for the purpose of burnishing its surface, and the plaintiff's device rocks only about a joint between the wooden heel and the leather toplift, for the purpose primarily of rolling in the rough edges and incidentally burnishing the joint.

■ In the defendant's device, the iron rocks about the joint between the toplift and the heel, and reads directly on these claims. The fact that the pivot center of the iron-carrying yoke is remote from and not in line with the joint between the heel and the lift is of no importance, and does not relieve the defendant of infringement. That results from simple mechanical adjustment. Neither does the reversal of the parts (i.e., providing for oscillation of the iron about the joint, instead of oscillation of the heel and jack about the iron) save the ·defendant. Infringement cannot be escaped by the mere reversal of the parts which serve to accomplish the same results. Wachs et al. v. Balsam, 2 Cir., 38 F.2d 50.

The range of equivalents to which the plaintiff is entitled is sufficiently broad to cover the defendant's device, and therefore claims 1, 2, and 3 are infringed by the defendant.

### Positioning and Clamping.

■ Claims 13, 14, 16, 18, 19, and 30 are involved in this operation. The real defense to all, but claim 18, is noninfringement. Claim 18 is alleged to be invalid in view of MacDonald No. 1,753,425 and Tisdell No. 1,349,863. These two prior patents cover clamping devices for heels with one member adjustable to the angle of the wedge, but neither shows a positioning device. They therefore do not anticipate plaintiff's patent. While the jack itself is not new, the method provided in plaintiff's patent for positioning is new, and I therefore find and rule that claim 18 is valid. Although in actual practice the operators of the plaintiff's device do not use the heel seat centering device that in nowise affects the claims of the patent. All that has been said as to claim 18 likewise applies to the other claims involved in the positioning and clamping device, and they are all valid claims.

The question of infringement of these claims relating to positioning and clamping is not free of doubt. While the defendant uses its spur-guard, which is likewise fixed at an angle to approximate the wedge angle, as a member of its clamping device, it in nowise positions the heel through the ·use of this guard. In the operation of its device, positioning occurs only through the breast plate and the toplift seat. As a matter of fact, it would be possible to utilize this guard-plate for positioning only under the most favorable circumstances, and then by a very fine adjustment of the convex guard-plate to fit the concave heel seat. Giving the plaintiff all to which it seems entitled, I find that the defendant's device does not infringe the claims relating to positioning and clamping.

### Conclusions of Law.

Claims 1, 2, and 3 are valid and infringed. Claims 13, 14, 16, 18, 19, and 30 are valid and not infringed.

A decree may be submitted in accordance with the above.