379 F.2d 294
 CHEMICAL CLEANING, INC., John H. Rusch and George Lewis, Appellants,
v.
The DOW CHEMICAL COMPANY, Appellee.
The DOW CHEMICAL COMPANY, Appellant,
v.
CHEMICAL CLEANING, INC., John H. Rusch and George Lewis, Appellees.
 No. 23498.
 United States Court of Appeals Fifth Circuit.
 June 15, 1967.
 Rehearing En Banc Denied July 31, 1967.
 
 M. Ted Raptes, Washington, D. C., Monroe & Lemann, Benj. R. Slater, Jr., New Orleans, La., of counsel, for appellants-appellees, Chemical Cleaning, Inc., et al.
 Joseph B. Miller, F. Frank Fontenot, New Orleans, La., William M. Yates, Midland, Mich., Charles J. Merriam, William A. Marshall, Allen H. Gerstein, Chicago, Ill., Merriam, Marshall, Shapiro & Klose, Chicago, Ill., Milling, Saal, Saunders, Benson & Woodward, New Orleans, La., of counsel, for plaintiff-appellee-appellant.
 Before HUTCHESON, GEWIN and DYER, Circuit Judges.
 HUTCHESON, Circuit Judge.
 
 
 1
 This appeal is from a judgment of the district court holding Chemical Cleaning, Inc. (CCI) guilty of civil contempt in that it knowingly and willfully violated an order which had enjoined it from further infringing a patent held by Dow Chemical. We affirm on the issue of contempt, but remand for a hearing on the issue of damages and costs.
 
 
 2
 On November 8, 1960, Dow obtained Patent No. 2,959,555 (hereafter Patent 555) which claims a chemical process to be used in the cleaning of industrial steam generating boilers. Such boilers accumulate on their metal sides incrustations of copper and iron oxide. The cleaning of the boilers involves the periodic removal of the incrustations. The cleaning job is made difficult by the fact that the copper, once removed, has a tendency to become redeposited on the metal surfaces before it can be flushed from the boiler. Patent 555 avoids that difficulty by the use of thiourea, a urea derivative, which acts as a sequestering agent to hold the copper within the cleaning solution until the whole solution can be flushed out of the boiler.
 
 
 3
 CCI also cleans industrial boilers by use of chemicals. Pursuant to a suit brought by Dow against CCI for infringement of Patent 555, the United States District Court for the Eastern District of Louisiana entered an order on December 7, 1961, that Dow's patent was valid and had been infringed in that CCI had employed thiourea in its boiler cleaning operations. An injunction was issued against CCI ordering that it refrain from further infringements of the patent.
 
 
 4
 CCI then began using another chemical compound, monomethylolthiourea, which it called Sequestrol 60. Dow filed the instant contempt action alleging that the use of the new solution constituted a violation of the injunction since Sequestrol 60 was merely thiourea to which formaldehyde had been added, and which, when used, disassociated to produce significant amounts of thiourea. The court below found that Sequestrol 60 was indeed the equivalent of thiourea and held CCI in civil contempt of the injunction. It is the issue of equivalency which we first consider.
 
 
 5
 In recognition of the fact that a patent would be virtually worthless if it did not protect against devices which incorporate only unimportant variations of the patented device, the doctrine of equivalents provides that a later-developed device will be regarded as the equivalent of the patented device if, although different in form or shape, it "performs substantially the same function in substantially the same way to obtain the same result." Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929). In its early development, the doctrine generally was applied in cases involving the equivalence of devices having mechanical components. Today, however, the same principles are applied to compositions where there is equivalence between chemical ingredients. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 609, 70 S.Ct. 854, 857, 94 L.Ed. 1097 (1955).
 
 
 6
 In Graver, the Supreme Court spoke to the problem of determining what constitutes equivalency:
 
 
 7
 "Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform."
 
 
 8
 "A finding of equivalence is a determination of fact. Proof can be made in any form: through testimony of experts or others versed in the technology by; documents, including texts and treatises; and, of course, by the disclosures of the prior art. Like any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence. It is to be decided by the trial court and that court's decision, under general principles of appellate review, should not be disturbed unless clearly erroneous. Particularly is this so in a field where so much depends upon familiarity with specific scientific problems and principles not usually contained in the general storehouse of knowledge and experience." Id, 339 U.S. at 609-610, 70 S.Ct. at 857. (Emphasis added.)
 
 
 9
 The district court sitting without a jury made full and complete findings of fact after considering expert testimony and the results of various experiments offered by both parties. Because there is little dispute as to the correctness of these findings, they need not be repeated in specific detail here. A brief summary will suffice. Sequestrol 60 is prepared by compounding thiourea and formaldehyde under alkaline conditions. The process is reversible, and the trial court found that under the boiler treating conditions employed by CCI, Sequestrol 60 disassociates to produce about 90% by weight of thiourea in the free or uncombined form, and some formaldehyde. The court determined that Sequestrol 60 does the same work, is employed in the same way, and accomplishes the same result as thiourea in functioning as a copper sequestering agent. Sequestrol 60 was held to be the equivalent of the thiourea solution protected by Patent 555. Hence, it was decided that CCI had violated the injunction because it had further infringed Dow's patent by the use of Sequestrol 60; moreover, the violation was considered deliberate and willful.
 
 
 10
 CCI apparently does not attack the factual findings of the district court, but challenges only the conclusions to be drawn from such findings. CCI contends that the factual finding of equivalency will not support the conclusion of what it terms "legal equivalency" because the court erroneously failed to consider an expired patent, by denying its admission into evidence, which CCI claimed it was practicing. As pointed out in the Graver case, however, a finding of equivalency is a determination of fact. Furthermore, proof that CCI was practicing an expired patent should have been adduced at the original infringement proceeding. CCI's contentions on this point must be rejected, and we conclude that the district court's finding of equivalency, which is supported by considerable evidence, must be affirmed.
 
 
 11
 Dow filed a cross-appeal alleging that the district court erred in failing to provide a separate hearing on the issue of damages and costs, including attorneys' fees, following the decision on the merits. The contempt action was filed by Dow on April 2, 1962, on the basis of CCI's cleaning activities at the Riverbend Station of the Duke Light & Power Company. Due to the failure of a court reporter to transcribe the first hearing, a delay of two years occurred before a recorded hearing was obtained. Since the Riverbend cleaning operation was the only contemptuous activity known to Dow at the time this action was filed, Dow alleged damages of only $1,000 which were awarded it by the district court. Dow claims, however, that CCI had committed other contemptuous acts during the two-year period which the court should have considered, but did not, in its award of damages. Dow says no evidence going to prove increased damages was presented in the trial court pursuant to an express agreement between Dow's counsel and the trial court that the issues of liability and damages would be separated. The agreement was as follows:
 
 
 12
 "Your Honor, I would like to clarify one thing, if I could. At the previous hearing it was my understanding that we would separate the issues of liability and damages and we would not go into proof of damages at this time. If that is still Your Honor's intention, Plaintiff rests."
 
 
 13
 "All right", answered the judge. We feel that Dow's counsel was inadvertently lulled into the belief that the issue of damages would be left to be considered separately. Yet damages were awarded without a further hearing for Dow to present its evidence thereon. CCI does not point to any part of the record which shows that this agreement subsequently was altered, nor do we have any reason to believe that it was.
 
 
 14
 The judgment holding CCI in civil contempt is affirmed. The award of $1,000 is reversed, and the case is remanded for a consideration of an award of damages and attorneys' fees, if any. In view of this disposition of the case, the motion by Dow to dismiss CCI's appeal is denied.
 
 
 15
 Affirmed in part; reversed and remanded in part.
 
 On Petition for Rehearing
 PER CURIAM:
 
 16
 The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, Rule 25(a), sub-par. (b), the Petition for Rehearing En Banc is denied.