**GREAT LAKES CARBON CORPORA-TION, a Delaware corporation, Plaintiff-Appellant,**

v.

**EAGLE LUMBER DEALERS SUPPLY COMPANY OF ILLINOIS, F. E. Schundler & Co., an Illinois corporation, and Johns-Manville Corporation, a New York corporation, Defendants-Appellees.**

No. 16636.

United States Court of Appeals Seventh Circuit.

Sept. 4, 1968.

As Modified on Denial of Rehearing Sept. 18, 1968.

Harvey H. Acton, Danville, Ill., Carl F. Peters, Palatine, Ill., W. L. Benedict, Washington, D. C., for appellant.

Thomas C. Stifler, III, Danville, Ill., Homer J. Schneider, Chicago, Ill., for appellees.

Before CASTLE, Chief Judge, and SCHNACKENBERG * and CUMMINGS, Circuit Judges.

* Judge Schnackenberg did not participate in the modification of this opinion. The modification was adopted on September 18, 1968, after his death in an order denying a petition for rehearing.

SCHNACKENBERG, Circuit Judge.

Great Lakes Carbon Corporation, a Delaware corporation, plaintiff, has appealed from an order of the district court denying its motion to hold defendants in contempt, entered October 17, 1967, and two orders of that court entered November 14, 1967, one of which denied a motion to amend its pleadings and to stay order, the second of which denied its motion to vacate the order of court denying its motion for contempt.

In August 1957, plaintiff, owner of Miscall patent 2,634,207 ('207),[1] sued Eagle Lumber Dealers Supply Co. of Illinois and F. E. Schundler & Co., Inc., an Illinois corporation, charging infringement of its patent. After trial of the issues of validity and infringement, but before the court's decision was reached, Johns-Manville Corporation, a New York corporation, bought Schundler. Thereafter, on September 29, 1959, the original parties and Johns-Manville agreed to a decree which was then approved by the court and entered. The decree recited, *inter alia*, that defendants infringed the patent, that the patent was valid, and that Johns-Manville would be bound by the decree. Eagle Lumber Dealers Supply Co. of Illinois (not a party to these contempt proceedings), was permanently enjoined by that decree from further infringement.

Contemporaneously plaintiff, together with Johns-Manville and Schundler, also entered into a Settlement and License Agreement (hereinafter called the "1959 agreement"), which was approved by the court on September 29, 1959 and attached to and made a part of the decree. Pursuant to the 1959 agreement, plaintiff granted a nonexclusive, irrevocable license to Johns-Manville under '207, and two other patents which are not before the court at this time. Johns-Manville acquired a paid-up royalty under '207 for production of insulating material at the Schundler plant, but was obligated to pay a running royalty at any other plant it had or might acquire.

On January 25, 1963 plaintiff and Johns-Manville executed an agreement in which plaintiff granted Johns-Manville a nonexclusive, irrevocable license under a fourth patent,[2] effective September 30, 1959. This 1963 agreement, similar in its terms to the 1959 agreement, was executed by the parties however without approval of the court.

Effective January 1, 1965 plaintiff and Johns-Manville executed a third agreement canceling certain substantially identical sections of the earlier two license agreements without the approval of the court. The substance of these deletions is not relevant to the decision of this appeal. But the agreement indicated in the preamble that:

"Whereas despite approval of the Settlement and License Agreement by the United States District Court for the Eastern District of Illinois, changed circumstances since such approval raise questions concerning the continued legality of the arrangement; * * *"

During the last quarter of 1964, Johns-Manville commenced making insulating material at Natchez, Mississippi and selling it under the name of "FESCO BOARD". According to plaintiff, this product consisted of perlite, asphalt and fiber. Johns-Manville paid royalty on this material until about January 1, 1965, at which time it claims it added a starch ingredient. Thereafter, it refused to pay royalty on the product and on April 25, 1966 plaintiff filed its motion for contempt, claiming royalties under the agreements due on the "new" Fesco Board and praying that the court make a finding that the new product comes within the meaning of the 1959 final judgment. Plaintiff maintains that, even if Johns-Manville added a starch ingredient, that is a sizing mate-

---

1. The patent was for an insulating product of fiber and a mineral called expanded perlite.

2. The fourth patent was for an insulating material of asphalt and a mineral called expanded perlite.

rial and hence an additive within § 8(b) of the agreement.

This suit followed.

In response to the motion for contempt, Johns-Manville questioned the legality of the consent decree dated September 29, 1959 and raised issues as to enforceability, and as to the validity of '207. Plaintiff moved to strike these defenses and moved to amend the pleadings so as to allege an alternative cause of action for declaratory judgment of the rights of the parties. The district court did not rule on the motion to strike and summarily dismissed the motion to amend, without comment. Plaintiff's motion for contempt was thereafter denied,[3] on the ground that the parties had amended the 1959 agreement without leave of court. The court subsequently refused to vacate said order of denial of plaintiff's motion for contempt.

1. Both plaintiff and defendant agree that, subsequently to the district court's entry of the said consent decree, the parties entered into two other agreements, dated January 25, 1963 and January 1, 1965, respectively. Both parties further agree that neither of these agreements was entered into with approval of the court. However, plaintiff contends that neither agreement substantially altered the terms of the court's decree. We disagree.

■ The 1959 agreement related to three Miscall patents and provided for payment of royalties to plaintiff upon products embraced by one or more claims of those patents where the essential ingredients were perlite and fiber, *when asphalt (an additive)* was excluded from the determination. The January 25, 1963 agreement, expressly made effective from September 30, 1959, related to the fourth Miscall patent and provided for payment of royalties to plaintiff upon products embraced by the claim of that patent where the essential ingredients were perlite and asphalt,

*when fiber (an additive)* was excluded. Thus, the 1963 agreement significantly, altered, *ex post facto*, the critical status of asphalt by changing it from an additive to an essential ingredient, with respect to the questions of infringement and royalties. By virtue of that agreement, the district court in the instant proceeding was presented with the issue as to whether the challenged product infringes the product described by its 1959 decree. Such question requires a hearing to determine whether starch and asphalt are additives (as alleged by plaintiff), or ingredients (as asserted by defendant). We hold that the complexity of this issue and the necessity of a hearing by the court are beyond the scope of a motion for contempt, because a consent decree will not be expanded beyond the meaning of its terms when read in the light of the issues raised and the purpose for which this suit was brought. See Terminal R. R. Assn. v. United States, 266 U.S. 17, 29, 45 S.Ct. 5, 69 L.Ed. 150 (1924).

In Baltz v. The Fair, 7 Cir., 279 F.2d 899, at 903 (1960), we said:

"*As a general rule,* however, we deem it better practice not to resort to contempt proceedings for the determination of collateral substantial questions arising subsequent to the issuance of an injunction, unless it is quite clear from the surrounding circumstances that such a course is required to preserve the integrity of the injunction."

Substantial changes were made in the 1959 agreement without the approval of the court and, therefore, it was not error for the district court to deny plaintiff the relief sought by its motion that defendants be held in contempt of court. Therefore the October 17, 1967, order of the district court denying said motion is affirmed.

■ 2. Before the district court had entered its ruling as above described, plaintiff filed a motion for leave to amend its pleadings to assert a prayer

---

3. The court used the word "dismiss". Counsel for both litigants correctly used the word "denied".

for declaratory judgment and other relief. This the court denied on November 14, 1967. We find no error in that respect in view of a district court's large discretion in such matters. However, the court's ruling on the motion for leave to amend does not operate to preclude plaintiff from obtaining a hearing on the merits of its claim. Plaintiff is free to institute an appropriate declaratory judgment action for that purpose.

Affirmed.