**KSM FASTENING SYSTEMS, INC.,**
**Plaintiff-Appellee,**

v.

**H.A. JONES COMPANY, INC. and Erico**
**Jones Company,**
**Defendants-Appellants.**

**Appeal No. 84–1568.**

United States Court of Appeals,
Federal Circuit.

Oct. 29, 1985.

John W. Renner, Maky, Renner, Otto & Boisselle, Cleveland, Ohio, argued for defendants-appellants. With him on brief was Don W. Bulson.

Charles F. Duffield, Duffield & Lehrer, Cherry Hill, N.J., argued for plaintiff-appellee. With him on brief was Norman E. Lehrer.

Before NIES, NEWMAN and BISSELL, Circuit Judges.

NIES, Circuit Judge.

This appeal is from an order of the United States District Court for the District of New Jersey (Judge John F. Gerry presiding) holding H.A. Jones Company, Inc. and Erico Jones Company (hereinafter collectively Jones) in civil contempt of court for violation of the terms of a consent decree entered in a patent infringement suit. On April 30, 1979, a predecessor of KSM Fastening Systems, Inc., brought suit against Jones alleging infringement of U.S. Patent No. 3,738,217, which claims a particular hanger assembly or anchor for securing refractory linings to furnace walls (KSM's INSULTWIST), by reason of Jones' manufacture and sale of a device of that type (Jones' THERMAL–LOCK device). Pursuant to a settlement agreement between the parties, which was entered as a consent decree on March 6, 1980, Jones acknowledged the validity of the KSM patent, admitted infringement thereof by its THER-

MAL–LOCK device, and was enjoined from further infringement.

Jones subsequently put out a modified refractory anchor (ULTRA–LOK I) and on September 22, 1981, KSM moved the court to punish Jones for contempt for violation of the injunction. On July 17, 1984, the court found Jones in contempt by reason of Jones' manufacture and sale of the UL-TRA–LOK I device and another model, UL-TRA–LOK II, which Jones began marketing in late 1983 or early 1984. This appeal followed.[1]

Under the standard we conclude is appropriate, the judgment must be set aside as a matter of law because of the refusal of the district court to consider whether the Jones ULTRA–LOK devices infringed the claims of the '217 patent. Moreover, the question whether contempt proceedings involving the ULTRA–LOK devices are appropriate must also be reexamined. Therefore, upon remand, the district court is directed to reconsider whether, under the standard set forth herein, infringement with respect to the ULTRA–LOK devices should be tested in contempt proceedings.

I.

Under the Patent Act of 1952, as part of the relief available to a prevailing patent owner, 35 U.S.C. § 283 provides:

> The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.

While the grant of injunctive authority is clearly in discretionary terms, *Roche Products, Inc. v. Bolar Pharmaceutical Co., Inc.*, 733 F.2d 858, 865, 221 USPQ 937, 942 (Fed.Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 183, 83 L.Ed.2d 117 (1984), injunctive relief against an infringer is the norm. *See Smith International, Inc. v. Hughes Tool Company*, 718 F.2d 1573, 219 USPQ 686

(Fed.Cir.), *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983).

Having enjoined the infringer, a patent owner who is confronted with another possible infringement by that party in the form of a modified device will very likely seek to invoke the power of the court to punish the adjudged infringer for contempt in violating the court's injunctive order. While a patent owner, in such circumstances, could institute a separate suit to enjoin the modified device, the advantages of proceeding on a motion to hold his adversary in contempt are substantial. The adjudged infringer is already under the jurisdiction of the court and may be summoned to appear to respond on the merits, the contempt motion being merely part of the original action. *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389 (1932). Contempt proceedings are generally summary in nature and may be decided by the court on affidavits and exhibits without the formalities of a full trial, although the movant bears the heavy burden of proving violation by clear and convincing evidence. *See* 11 Wright & Miller, *Federal Practice and Procedure: Civil* § 2960 at 591, and cases cited therein; *see also Quinter v. Volkswagen of America*, 676 F.2d 969, 974 (3rd Cir.1982); *A.H. Robins Co., Inc. v. Fadely*, 299 F.2d 557, 559 (5th Cir.1962); *Fox v. Capitol Co.*, 96 F.2d 684, 686 (3rd Cir.1938). If violation is found, the contemnor may be punished by fine (payable to the patent owner) and imprisonment, even in civil contempt. Wright & Miller, *supra*, at 584–85.[2]

A civil contempt proceeding for violation of an injunction issued after patent litigation, while primarily for the benefit of the patent owner, nevertheless, involves also the concept of an affront to the court for failure to obey its order. As explained in *American Foundry & Manufacturing Co. v. Josam Manufacturing Co.*, 79 F.2d 116, 118, 26 USPQ 338, 339 (8th Cir.1935):

---

1. The ruling of this court denying a motion to dismiss for lack of a final order is reported at 745 F.2d 630, 223 USPQ 689 (Fed.Cir.1984).

2. *See also* Nemmers, Enforcement of Injunctive Orders and Decrees in Patent Cases, 7 Ind.L.

Rev., 287 (1973), for analyses of the difference between civil and criminal contempt proceedings and of the different remedies available for civil contempt vis-a-vis those provided under the patent statute (e.g., damages).

A decision adjudging infringement necessarily finds the particular accused device to be within the valid boundary of the patent. The decree usually carries a prohibition against further infringement—not as to any and every possible infringement, but as to the particular device found to be infringement and as to all other devices which are merely "colorable" changes of the infringing one or of the patent. This limitation of the effect of such a decree is occasioned somewhat by the indefinite character of the boundaries of a patent, but more by the character of the remedy—summary contempt proceedings—used to enforce such provisions of a decree. This is merely an application to patent injunction contempt proceedings of the general rule as to all civil contempt proceedings. *Oriel v. Russell*, 278 U.S. 358, 365, 49 S.Ct. 173 [175] 73 L.Ed. 419; *City of Campbell v. Arkansas-Missouri Power Co.*, 65 Fed.(2d) 425, 428 (C.C.A.8). That rule was stated by this Court to be that "when it is doubtful whether a decree of injunction has been violated, a court is not justified in punishing for contempt, either criminal or civil, for the reason that no one can say with any degree of certainty that the authority of the court needs vindication or that the aggrieved party is entitled to remedial punishment" *City of Campbell v. Arkansas-Missouri Power Co.*, 65 Fed.(2d) 425, 427, 428.

In view of these and other considerations to be discussed, where the patent owner seeks to enforce an injunction against an enjoined infringer by reason of a manufacture which was not the subject of the original litigation, the courts have been uniform in exercising restraint in affording the patent owner the benefit of contempt proceedings.

In *MAC Corp. of America v. Williams Patent Crusher & Pulverizer Co.*, 767 F.2d 882, 226 USPQ 515 (Fed.Cir.1985), this court affirmed the denial of proceedings in contempt where the district court found a "fair ground of doubt" that the injunction

against infringement had been violated because of differences between the adjudged and accused devices. In so holding, the court followed the Supreme Court's directive in *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618, 5 S.Ct. 618, 622, 28 L.Ed. 1106 (1885):

> Process of contempt is a severe remedy, and should not be resorted to where there is *fair ground of doubt* as to the wrongfulness of the defendant's conduct. [Emphasis added.]

Thus, not all subsequent infringements by an enjoined party are deemed in contempt of the court, even though an injunction may be written broadly enjoining, as in *California Paving*, further infringements.

While the courts have been uniform in acknowledging that contempt does not embrace all infringements by modified devices, there has not been uniformity in the actual standards for determining (1) when contempt proceedings will be entertained, and (2) when contempt will be found. These are separate questions and the standard for determining the answer to each must be addressed in this appeal.

## II.

Injunctions in patent cases, like injunctions in other types of cases, are subject to Rule 65(d) Fed.R.Civ.P., which provides:

> (d) *Form and Scope of Injunction or Restraining Order.* Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Contempt authority is provided to the federal courts under 18 U.S.C. § 401 (1982),[3] which reads:

---

**3.** This statute affords the general statutory authority for civil contempt sanctions, *Interdy-* *namics I, infra,* 653 F.2d at 97, 210 USPQ at 871;

§ 401. *Power of court*

A court of the United States· shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Thus, in view of the requirement for definiteness and the limitation of contempt enforcement to "lawful" orders, many courts refrain from broadly enjoining "further infringements" and limit the injunction as indicated in the *American Foundry* opinion. *See, e.g., Square Liner 360°, Inc. v. Chisum,* 691 F.2d 362, 378, 216 USPQ 666, 678 (8th Cir.1982) (John R. Miller, Judge, United States Court of Customs and Patent Appeals, sitting by designation) (injunction against particular device "and any infringing equivalents" set aside for failing to satisfy "the specificity and description requirements of Rule 65(d)"). *Accord, Ideal Toy Corp. v. Plawner Toy Mfg. Corp.,* 685 F.2d 78, 83, 216 USPQ 102, 107 (3d Cir.1982) (injunction against "infringement" of plaintiff's trademarks too vague); *see also American Can Co. v. Mansukhani,* 742 F.2d 314, 332–33, 223 USPQ 97, 110–11 (7th Cir.1984) (trade secret injunction too vague); and *E.W. Bliss Co. v. Struthers-Dunn, Inc.,* 408 F.2d 1108, 1113–17, 161 USPQ 263, 267–70 (8th Cir.1969) (trade secret injunction too vague).

If the potent weapon of judicial contempt power is to be brought to bear against a party for violation of an order, "one basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 444, 94 S.Ct. 1113, 1126, 39 L.Ed.2d 435 (1974). *See also Litton Systems, Inc. v. Sundst-*

*rand Corp.,* 750 F.2d 952, 957–58, 224 USPQ 252, 256 (Fed.Cir.1984). Merely telling the enjoined party not to violate a statute is routinely condemned. *See N.L.R.B. v. Express Pub. Co.,* 312 U.S. 426, 435–36, 61 S.Ct. 693, 699–700, 85 L.Ed. 930 (1941), and cases cited therein. It is apparent, nevertheless, from a review of patent cases dealing with contempt proceedings that injunctions are frequently drafted or approved by the courts in general terms, broadly enjoining "further infringement" of the "patent," despite the language of Rule 65(d), and Supreme Court interpretation.

The unreasonableness of a decree incorporating a vague or broad prohibition against "infringement" of a "patent" is alleviated because of the universal rule, to be addressed *infra,* that contempt proceedings, civil or criminal, are available only with respect to devices previously admitted or adjudged to infringe, and to other devices which are no more than colorably different therefrom and which clearly are infringements of the patent. This limitation is seen as properly balancing the interests of the respective parties. An enjoined party is entitled to design around the claims of a patent without the threat of contempt proceedings with respect to every modified device although he bears the risk that the enjoining court may find changes to be too insubstantial to avoid contempt.

Conversely, where an injunction is written narrowly against a particular infringing device, contempt may, nevertheless, be found on the basis of a modified infringing device. An enjoined party under a narrow decree will not be permitted to escape on a purely "in rem" theory that only a particular device is prohibited, where it is evident that the modifications do not avoid infringement and were made for the purpose of evasion of the court's order. Again, the standard is whether the differences between the two devices are merely colorable. *Accord McCullough Tool Co. v. Well Surveys, Inc.,* 395 F.2d 230, 233, 158

*United States Ex Rel. Shell Oil Co. v. Barco Corp.,* 430 F.2d 998, 1000, 167 USPQ 515, 516

(8th Cir.1970), as well as criminal sanctions. *Id.*

USPQ 81, 84 (10th Cir.), *cert. denied*, 393 U.S. 925, 89 S.Ct. 257, 21 L.Ed.2d 261, 159 USPQ 799 (1968), and cases cited therein.

Authority can be found in all circuits for these general principles, but their implementation varies not merely from circuit to circuit but from court to court. Part of the uniformity in patent law which we see as a necessary element is uniformity in the scope of relief which is available to the patent owner. Otherwise, forum shopping, the vice sought to be remedied by creation of this court,[4] will continue. To achieve such uniformity of the rights of patent owners, it could be required that injunctions be written in a particular way. However, we believe it is preferable to allow the district courts wide latitude in framing injunctions within, of course, the dictates of Rule 65(d). Whether a party is to be held in contempt, thus, becomes the matter on which uniformity is to be sought.

### III.

The injunction entered in the present case was in the following terms:

> 6. The Defendant ... [is] enjoined and restrained from making, using or selling insulation hangers or refractory anchors of the type and nature identified by the Plaintiff in its Complaint against the Defendant for the remainder of the life of U.S. Patent No. 3,738,217 issued June 12, 1973.

Despite the reference to the complaint, contrary to Rule 65(d), Jones has not challenged this error, nor does Jones challenge that the injunction is enforceable against devices other than the specific THERMAL-LOCK device of the original suit. Jones' challenge is to the standards applied by the district court in holding the company in contempt. Jones urges that its ULTRA-LOCK devices do not infringe the claims of '217 and that the differences between the THERMAL-LOCK and ULTRA-LOK devices are so great that KSM should have to bring a separate suit to determine infringement by these devices. KSM, on the other hand, asks us to endorse the standard on contempt proceedings utilized in this case and, of course, to uphold the contempt judgment.

### A.

The standard for determining contempt applied in the present case was that set forth in *Interdynamics, Inc. v. Firma Wolf,* 653 F.2d 93, 210 USPQ 868 (3rd Cir.), *cert. denied sub nom., Trans Tech, Inc. v. Interdynamics, Inc.,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981) (*Interdynamics I* ), and *Interdynamics, Inc. v. Firma Wolf,* 698 F.2d 157, 217 USPQ 117 (3rd Cir.1982) (*Interdynamics II* ), as interpreted by the district court. The district court held that, under *Interdynamics I and II,* contempt proceedings should be conducted and contempt found where an enjoined device and an accused device were "merely colorably different," and that in order to determine whether two devices are "merely colorably different," the accused device must be compared to the adjudged device under a "doctrine of equivalents":

> [I]f two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though different in name, form or shape. *Interdynamics* II, 698 F.2d at 162 (*quoting Interdynamics* I, 653 F.2d at 99).

This doctrine was adapted from the familiar doctrine of equivalents enunciated by the Supreme Court in *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed.2d 1097, 85 USPQ 328, 330 (1950). The *Graver Tank* doctrine of equivalents differs, however, in that the comparison under *Graver Tank* is between an alleged infringing device and the patent claims, and the range of equivalents is subject to limitation by prosecution history estoppel and the prior art. *Perkin-Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 900, 221 USPQ 669, 678 (Fed.Cir.1984).

In adjudging Jones to be accountable in contempt proceedings and in holding Jones

---

4. *See* H.R.Rep. No. 312, 97th Cong., 1st Sess. 20–23 (1981); S.Rep. No. 275, 97th Cong., 1st Sess. 5, 19–20, *reprinted in* 1982 U.S.Code Cong. & Ad.News 11, 15, 29–30.

in contempt, the district court refused to consider whether the accused ULTRA–LOK devices infringed the claims of the '217 patent, rejecting as irrelevant Jones' proffered evidence of the patent and its prosecution history by which Jones sought to prove that its modified device did not infringe the patent claims. The court interpreted *Interdynamics I and II* as precluding any consideration of the issue of infringement.[5]

## B.

■ Turning first to the question of the judgment of contempt itself, we agree, of course, that the issue in contempt proceedings is violation *vel non* of the injunction, not patent infringement. Nevertheless, devices which could not be enjoined *as infringements* on a separate complaint cannot possibly be deemed enjoined *as infringements* under an existing injunction in contempt proceedings. *Accord MAC Corp. of America,* 767 F.2d at 886, 226 USPQ at 518, " 'fair ground for doubt' on *infringement.*" (emphasis added). Infringement is the *sine qua non* of violation of an injunction against infringements.

■ The authorities are uniform that the modified device must be an infringement to find contempt of such an injunction. *See, e.g., Panther Pumps Equipment Company, Inc. v. Hydrocraft, Inc.,* 566 F.2d 8, 18–20, 196 USPQ 81, 88–90 (7th Cir.1977) (C.J. Markey of this circuit, sitting by designation), *cert. denied sub nom., Beck v. Morrison Pump Co.,* 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978); *Hirs v. Detroit Filter Corp.,* 424 F.2d 1040, 1041, 165 USPQ 290, 291 (6th Cir.1970); *Ransburg Electro-Coating Corp. v. Ionic Electrostatic Corp.,* 395 F.2d 92, 157 USPQ 662 (4th Cir.1968), *cert. denied,* 393 U.S. 1018, 89 S.Ct. 623, 21 L.Ed.2d 562, 160 USPQ 832 (1969). Indeed, the *Interdynamics I and II* decisions of the Third Circuit require *infringement,* and the standard it adopted, sought to reach only a narrower class of

infringing devices in contempt proceedings, as the following statement indicates:

> Even if the new product may infringe the patent, as long as it is more than "colorably different" *the infringement should not amount to a contempt nor should it be tested in contempt proceedings. Siebring v. Hansen,* 346 F.2d [474] at 477 [ (8th Cir.1965) ]. [Emphasis added.]

*Interdynamics I,* 653 F.2d at 99. The difficulty is simply that the modified doctrine of equivalents adopted by the *Interdynamics* court does not assure a proper finding that the modified device infringes the claims.

■ It may not properly be assumed, as does the *Interdynamics* standard, that, because the ULTRA–LOK devices, in a sense, are "equivalents" to the enjoined THERMAL–LOCK device, they are also equivalents of the patent claims. As the Supreme Court observed, "[I]n determining equivalents, things equal to the same thing may not be equal to each other." *Graver Tank,* 339 U.S. at 609, 70 S.Ct. at 857, 85 USPQ at 33. So too, things equal to each other may not be equal to the same thing. In any event, if a determination of infringement by the accused ULTRA–LOK devices depends on a finding of equivalency, such finding must be made in accordance with the range of equivalents permitted by *Graver Tank.* The *Interdynamics* standard adopts familiar words from *Graver Tank,* but not its substance. Thus, no correlation between infringement by the accused device and by the adjudged device necessarily exists as a result of their equivalence to each other under the modified standard of *Interdynamics.*

■ In making a finding that the accused new device is an infringement, the court cannot avoid looking at the claims of the patent. It may, in some cases, only be necessary to determine that the modified device has not been changed from the adjudged device in a way which affects an

---

5. *Interdynamics I* had found error in that "the [district] court undertook to inquire whether the [modified] product infringed the [subject] patent." 653 F.2d at 98, 210 USPQ 872–3. Infringement was, in effect, presumed if the adjudged and accused devices were "equivalent" to each other.

element of a claim. In such case the new device, though modified, may be treated the same as the device which was admitted or adjudged to infringe. *Accord Hopp Press, Inc. v. Joseph Freeman & Co., Inc.,* 323 F.2d 636, 139 USPQ 141 (2d Cir.1963) (price tags changed only in use of opaque, rather than translucent, ink and in typeface of numerals). *Coleman Co. v. Holly Mfg. Co.,* 269 F.2d 660, 122 USPQ 559 (9th Cir. 1959) (accused device identical to adjudged device except for addition of an ineffectual small piece of metal).

■ In litigated cases, the injunction must be interpreted in light of the rulings of the court on the scope of the claims. The patent owner may not, in contempt proceedings, seek to broaden the scope of the claims which were adjudicated and, thereby, catch the modified device. *Marston v. J.C. Penney Co.,* 324 F.Supp. 889, 892, 170 USPQ 25, 28 (E.D.Va.1971), *aff'd per curiam,* 469 F.2d 694, 176 USPQ 193 (4th Cir.1972).

■ On the other hand, with a consent decree, an adjudged device conceivably could have been found *not* to fall within the scope of the claims upon a full trial. Nevertheless, such a device is an admitted infringement, and the claims of the patent may be construed in light of that admission when the court undertakes to determine whether a modified device is also an infringement in contempt proceedings.

■ Lest there be any doubt, we are speaking of infringement only in the sense of falling within the scope of the claims. Whether there is infringement may not be challenged in contempt proceedings on the basis that the patent is invalid. The validity of the patent is the law of the case in such proceedings. *See Carter Products, Inc. v. Colgate Palmolive Co.,* 269 F.2d 299, 122 USPQ 175 (4th Cir.1959); *Cassidy v. Puett Electrical Starting Gate Corp.,* 182 F.2d 604, 85 USPQ 388 (4th Cir.1950); and *Harford Agricultural & Breeders' Ass'n v. Puett Electrical Starting Gate Corp.,* 182 F.2d 608, 85 USPQ 384 (4th Cir.), *cert. denied,* 340 U.S. 878, 71 S.Ct. 125, 95 L.Ed.2d 638, 87 USPQ 432 (1950). (Contempt found for violating an injunction even though judgment on merits of original suit reversed on appeal.)

In the instant case, Jones has admitted that its THERMAL–LOCK device infringed the claims of the '217 patent. The record shows that the Jones THERMAL–LOCK device, indisputably, literally embodies the elements of the claim.

On the other hand, Jones asserts that its ULTRA–LOK devices have been modified in a manner which avoids infringement. An element in claim 1, the only independent claim, is a "stud of rectangular cross section having one pair of opposed sides narrower than the other pair." Claim 1 also specifies, "a plurality of opposed notches ... cut into the narrower sides of the stud."

■ There is no dispute that Jones ULTRA–LOK I and II studs do not literally infringe claim 1. The ULTRA–LOK studs are made from round stock which is selectively flattened to produce lateral protrusions. Accordingly, ULTRA–LOK studs are not of *"rectangular* cross-section" and do not have "opposed notches *cut* into the narrower sides thereof." Thus, the modified devices cannot be deemed to fall within Jones' admission of infringement with respect to its THERMAL–LOCK device contained in the consent degree. Due process requires that the consent decree be construed in accordance with the circumstances under which it was entered. *United States v. Armour & Co.,* 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). Infringement of the '217 claims by the ULTRA–LOK devices could only be found under the *Graver Tank* doctrine of equivalents, which played no part in the judgment of infringement in the original litigation.

Since the district court believed that *Interdynamics I and II* precluded its consideration of the claim language and the evidence proffered by Jones with respect to prior art and the prosecution history, the court excluded such evidence and made no finding of infringement.

■ Under the standard we adopt, a judgment of contempt against an enjoined party for violation of an injunction against patent infringement by the making, using or selling of a modified device may not be upheld without a finding that the modified device falls within the admitted or adjudicated scope of the claims and is, therefore, an infringement. Since the judgment holding Jones in contempt of court does not satisfy this standard, it must be vacated.

### C.

The standard for the initial question, that is, whether infringement should be adjudicated in contempt proceedings, is difficult to articulate with precision, since it involves, to a large extent, the exercise of judicial discretion. *MAC Corporation of America, supra.* Such discretion is not, however, unlimited. *Union Tool Co. v. Wilson,* 259 U.S. 107, 112, 42 S.Ct. 427, 429, 66 L.Ed. 848 (1922); *United States v. Armour & Co., supra;* Wright & Miller, *supra,* at 590.

There is, as previously indicated, uniformity in the circuits in so far as all have expressed the view that proceedings by way of contempt should not go forward if there is more than a "colorable difference" in the accused and adjudged devices.

For example, as stated by Chief Judge Godbold in *Sure Plus Mfg. Co. v. Kobrin,* 719 F.2d 1114, 1118 (11th Cir.1983):

Even if [defendant's] modified mirror assembly infringes the Sure Plus patent, as long as it is more than colorably different the infringement should not amount to a contempt nor should it be tested in contempt proceedings. *Interdynamics, Inc. v. Firma Wolf,* 653 F.2d at 99; *Siebring v. Hansen,* 346 F.2d at 477.

The explanation by the Tenth Circuit in *McCullough Tool Co. v. Well Surveys, Inc., supra,* identifies the conflicting interests to be considered in this initial question:

The question is presented as to how a patentee should be allowed to proceed when following a successful infringement suit the infringer modifies the infringing structure and continues as before. Allowing the patentee to proceed by a summary contempt proceeding in all cases would unnecessarily deter parties from marketing new devices that are legitimately outside the scope of the patent in question. On the other hand, to require in each instance the patentee to institute a new infringement suit diminishes the significance of the patent and the order of the court holding the patent to be valid and infringed. Obviously there must be a dividing point between those cases which should be handled by a summary contempt proceeding and those cases which should be more fully viewed in an infringement proceeding. Courts have uniformly held that the standard to be applied in determining the dividing point is whether the alleged offending device is "merely 'colorably' different from the enjoined device or from the patent."

*Id.* at 233, 158 USPQ at 84 (citations omitted) (cited with approval in *Sure Plus Mfg. Co. v. Kobrin,* 719 F.2d at 1118). However, stating that the "difference" must be more than "colorable" provides little guidance to the appropriateness of contempt proceedings. The standard for determining a "colorable" difference is critical, and an examination of case law indicates wide variance.

The following analysis from *American Foundry & Mfg. Co. v. Josam,* 79 F.2d at 117, 26 USPQ at 339, indicates again the importance of the initial question:

As will be hereinafter shown, all subsequent constructions by a convicted infringer are not triable in contempt proceedings. Only where such constructions are merely "colorably" different from the enjoined device or from the patent is the issue so triable. Such constructions may turn out to be infringements, but if they are more than "colorably" different, the issue of infringement must be otherwise determined than by a contempt proceeding. Therefore, when the issue of infringement is presented in a contempt proceeding, the court must first determine whether it can properly entertain the issue in that proceeding. The propriety of the trial court's determi-

nation that it should pass upon the 1933 device in a contempt proceeding is the issue which must be first determined by this court now. This issue is determinable by measuring the facts here by the legal definition of "colorable" as understood in connection with contempt proceedings for violation of a patent infringement injunction order. It is necessary to understand and state such definition.

The *American Foundry* court then defined "colorable" by the "fair ground of doubt" language from *California Artificial Stone Paving* and endorsed the Second Circuit view that:

> Where the alteration in the device is "merely colorable" and obviously was made for the purpose of evading the decree without essential change in the nature of the device, the courts will try the question of infringement by the new device in proceedings for contempt for violation of the injunction [Citations omitted.] But where infringement by the new device is not clear on the face of the matter, and there are substantial issues for the determination of the court, the plaintiff may not have them determined in contempt proceedings, but must bring a supplemental bill for an injunction covering the new device, or institute a wholly new suit for such an injunction.

*Radio Corporation of America v. Cable Radio Tube Corp.*, 66 F.2d 778, 782–83, 19 USPQ 104, 108 (2d Cir.1933), *cert. denied*, 290 U.S. 703, 54 S.Ct. 373, 78 L.Ed. 604 (1934) (quoted in *American Foundry*, 79 F.2d at 118). *Accord Great Lakes Carbon Corp. v. Eagle Lumber Dealers Supply Co.*, 402 F.2d 106, 159 USPQ 20 (7th Cir. 1968); *Baltz v. The Fair*, 279 F.2d 899, 126 USPQ 87 (7th Cir.1960); *Wachs v. Balsam*, 38 F.2d 50, 52, 4 USPQ 440, 442 (2d Cir. 1930), ("Once a patentee must have recourse to equivalents, his pretensions are usually too uncertain for peremptory dispo-

sition."); *AMP, Inc. v. S.A.E. Advanced Packaging, Inc.*, 168 USPQ 268 (C.D.Cal. 1970); 8 Deller's Walker on Patents § 736, at 530 (2d ed. 1973).

Under the above standard for determining a colorable difference, a party may seek relief by way of contempt proceedings only if the issues are appropriate for summary disposition. If substantial issues need to be litigated, particularly if expert and other testimony subject to cross-examination would be helpful or necessary, the court may properly require a supplemental or new complaint. The question to be answered under such standard is essentially a *procedural* one. Must substantial new issues be litigated to determine infringement?

Some courts, on the other hand, take a different view of the scope of a contempt proceeding, deeming it the proper context within which to litigate complex questions of infringement, including the *Graver Tank* doctrine of equivalents and prosecution history estoppel. *See, e.g., Ransburg Electro-Coating Corp. v. Ionic Electrostatic Corp.*, 395 F.2d 92, 157 USPQ 662 (4th Cir.1968); *cert. den.*, 393 U.S. 1018, 89 S.Ct. 623, 21 L.Ed.2d 562, 160 USPQ 832 (1969); *Chemical Cleaning, Inc. v. Dow Chemical Co.*, 379 F.2d 294, 155 USPQ 49 (5th Cir.1967), *cert. den.*, 389 U.S. 1040, 88 S.Ct. 777, 19 L.Ed.2d 829, 156 USPQ 719 (1968); *Siebring v. Hansen*, 346 F.2d 474, 145 USPQ 634 (8th Cir.), *cert. den.*, 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352, 147 USPQ 541 (1965). Thus, the initial question under this view of contempt is essentially bypassed, although overall this view has the virtue of a proper determination of the issue of infringement.[6] We agree, however, with the *McCullough* and *American Foundry* courts that the question whether the alleged infringement should be determined in contempt at all deserves careful scrutiny.

---

**6.** In some cases a court may treat a motion for contempt as a supplemental complaint for modification of the injunction. 8 Deller's Walker on Patent § 736 at 530 (2d ed. 1973). In so doing, the proceedings lose their summary character and relief would be in accordance with the patent statute, rather than under 18 U.S.C. § 401. The authority which has allowed full litigation in contempt proceedings appears to combine contempt power with supplemental complaint procedures.

In *Interdynamics*, a *substantive* standard for determining "colorability" was used, namely, the previously mentioned adaptation of the *Graver Tank* doctrine of equivalents. Other courts have followed a similar approach for determining whether contempt proceedings should be allowed, differing, however, from the *Interdynamics* court in that the judgment of contempt itself rested on analysis of the patent claims. *See, e.g., Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 338 F.Supp. 1240, 172 USPQ 650 (W.D.Mich.1972), *aff'd per curiam*, 476 F.2d 1286, 178 USPQ 12 (6th Cir.1973); *Kirk Optical Lens Co. v. Dimelp Industries, Inc.*, 532 F.Supp. 296, 217 USPQ 1021 (E.D.N.Y.1981).

 With respect to the issue of when contempt proceedings will be allowed, we conclude that the procedural analysis used by the majority of courts should be adopted as the general rule.[7] A standard based on procedural considerations is more likely to meet due process requirements, considering the usual summary nature of contempt proceedings. Under a procedural standard, the district court is able to utilize principles of claim and issue preclusion (*res judicata*) to determine what issues were settled by the original suit and what issues would have to be tried. Such a determination may vary depending upon whether the original suit was settled by consent or fully litigated.[8] If there are substantial open issues with respect to infringement to be tried, contempt proceedings are inappropriate. *Accord California Paving*, 113 U.S. at 618, 5 S.Ct. at 622 (proceeding by way of a new suit "is by far the most appropriate one where it is really a doubtful question whether the new process adopted is an infringement or not"). The presence of such disputed issues creates a fair ground for doubt that the decree has been violated. So long as the district court exercises its discretion to proceed or not to proceed by way of contempt proceedings within these general constraints, this court must defer to its judgment on this issue. *MAC Corporation of America*, 767 F.2d at 885–86, 226 USPQ at 518.

### IV.

In sum, the initial question to be answered in ruling on a motion for contempt is whether contempt proceedings are appropriate. That question is answered by the trial court's judging whether substantial disputed issues must be litigated. The second question, whether an injunction against infringement has been violated, requires, at a minimum, a finding that the accused device is an infringement.

### V.

For the foregoing reasons, we *vacate* the judgment of contempt and *remand* for proceedings consistent herewith.

VACATED AND REMANDED.

PAULINE NEWMAN, Circuit Judge, concurring in part.

I agree that this case should be remanded for further findings on the question of equivalency, but I do not endorse the

---

7. As indicated in *Baltz v. The Fair*, 279 F.2d at 903, 126 USPQ at 90, the rule is a general one to be applied "unless it is quite clear from the surrounding circumstances that [a contempt proceeding] is required to preserve the integrity of the injunction."

8. This court has addressed issues of *res judicata* in a number of cases, *Kimberly-Clark Corp. v. Fort Howard Paper Co.*, 772 F.2d 860 (Fed.Cir. 1985); *Spears v. MSPB*, 766 F.2d 520 (Fed.Cir. 1985); *Schott Optical Glass, Inc. v. U.S.*, 750 F.2d 62 (Fed.Cir.1984); *Jackson Jordan, Inc. v. Plasser American Corp.*, 747 F.2d 1567, 224 USPQ 1 (Fed.Cir.1984); *Syntex Opthalmics, Inc. v. Novicky*, 745 F.2d 1423, 223 USPQ 695 (Fed. Cir.1984), *vacated and remanded,* —— U.S. ——, 105 S.Ct. 1740, 84 L.Ed.2d 807, 225 USPQ 792 (1985); *Brown v. U.S.*, 741 F.2d 1374 (Fed.Cir. 1984); *Chromalloy American Corp. v. Kenneth Gordon (New Orleans), Ltd.*, 736 F.2d 694, 222 USPQ 187 (Fed.Cir.1984); *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 220 USPQ 1017 (Fed.Cir.1984); *Young Engineers, Inc. v. ITC*, 721 F.2d 1305, 219 USPQ 1142 (Fed.Cir.1983); and *Sun Chemical Corp. v. U.S.*, 698 F.2d 1203 (Fed.Cir.1983). *See also* Note, "To Bind or Not to Bind: Bar and Merger Treatment of Consent Decrees in Patent Infringement Litigation, 74 Columbia Law Review 1332, 1333–38 (1984). It would be inappropriate in this opinion to treat these issues further.

sweeping rules of law and procedure espoused by the majority.

## I.

The question before the court is the law to be applied in the contempt action brought by KSM against Jones, an adjudged infringer that had modified its infringing insulation device in an attempt to avoid an existing injunction against infringement. On the facts of this case, it is a narrow question.

The broad question of law and procedure in patent contempt actions has occasioned great diversity among the circuits. The broad question does not have a single answer applicable in all circumstances. Thus although I concur in the result reached in this case, I disagree with the *dicta* that the majority purports to apply in all cases.

Careful analysis of the decisions of the various circuits shows how fact-dependent these decisions have been. I know of no reason to withdraw from trial courts the authority, in their discretion, to find contempt summarily when a modified device is "merely colorably different" from the prior adjudicated device. Most of the circuits have heretofore recognized the need for discretion in district courts to handle contempt cases simply and expeditiously, when the facts warrant. The majority ruling limits this discretion.

The majority holds that it is always error simply to compare the devices and to determine whether they are "merely colorably different". The majority holds that it is always necessary to return to the claims and to consider any questions raised of claim interpretation, prior art, and prosecution history estoppel. I agree that this is at times necessary or advisable. But I do not think it is proper for this court to impose this procedure upon courts and parties in all circumstances, including those where a trial court in its discretion does not

deem it necessary to relitigate these questions, or where *res judicata* may apply.

I think that this court should limit its decision to the issue before it.[1] This court has declared that Third Circuit law, as embodied in the *Interdynamics*[2] cases, will not be followed. *Interdynamics I and II* required the district court to compare the Jones devices to determine if they were "merely colorably different". If they were, contempt would lie; and the district court so held. By rejecting this law and procedure in all cases, whatever the facts, the majority has changed the practices of the Second, Third, and Eighth Circuits, and modified the discretionary practices of at least the Sixth and Eleventh Circuits, and of trial courts in other circuits; this is not required in order to decide the case before us.

## II.

The contempt proceeding is an essential tool of the judicial and public interest in the finality of litigation. It is applicable in patent cases as in other cases. *California Artificial Stone Paving Co. v. Molitor,* 113 U.S. 609, 5 S.Ct. 618, 28 L.Ed. 1106 (1885). At the heart of any contempt proceeding is the circumstance that the substantive issues were finally adjudicated in prior litigation between the same parties.

Contempt "should not be resorted to where there is fair ground of doubt as to the wrongfulness of the defendant's conduct". *Id.* at 618, 5 S.Ct. at 622. When an adjudged infringer has modified the infringing device in an attempt to avoid infringement, courts have consistently first analyzed the changes in the devices, in the context of determining whether to reopen issues previously adjudicated.

In *Interdynamics I* the Third Circuit reasoned that if a successful patentee holding a final judgment could only attack a mod-

1. The majority posits the "unreasonableness of a decree incorporating a vague or broad prohibition against 'infringement' of a 'patent'". A century of precedent weighs to the contrary. Nor has this question been raised on appeal.

2. *Interdynamics, Inc. v. Firma Wolf,* 653 F.2d 93, 210 USPQ 868 (3d Cir.) (*Interdynamics I*), cert. denied sub nom. Trans Tech, Inc. v. Interdynamics, Inc., 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631, 213 USPQ 888 (1981), and *Interdynamics, Inc. v. Firma Wolf,* 698 F.2d 157, 217 USPQ 117 (3d Cir.1982) (*Interdynamics II*).

ified product in a fully litigated infringement action, no matter how "colorable" the modification, this would "significantly diminish the force of a consent decree as a judgment of the court". 653 F.2d at 97, 210 USPQ at 872. If a patentee were required to relitigate that which it had settled by consent, perhaps having made extensive compromises to obtain the settlement, then patentees would lack incentive to enter into settlements while accused infringers could obtain both favorable settlements and the right to challenge that which had been settled. The Third Circuit said that this is not only unfair, it also frustrates the public and judicial interest in finality of litigation. *Id.*

The *Interdynamics* court observed that the procedure in contempt proceedings of comparing the modified product to the infringing product is the law of several circuits, citing *Siebring v. Hansen,* 346 F.2d 474, 477, 145 USPQ 634, 635–636 (8th Cir.), *cert. denied,* 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352, 147 USPQ 541 (1965); and *Hopp Press, Inc. v. Joseph Freeman & Co.,* 323 F.2d 636, 638, 139 USPQ 141, 142 (2d Cir.1963). *Interdynamics I,* 653 F.2d at 99 n. 1, 210 USPQ at 870 n. 1.

In contrast to the summary proceedings facilitated by the *Interdynamics* decisions, the Fourth Circuit in *Ransburg Electro-Coating Corp. v. Ionic Electrostatic Corp.,* 395 F.2d 92, 157 USPQ 662 (4th Cir.1968), *cert. denied,* 393 U.S. 1018, 89 S.Ct. 623, 21 L.Ed.2d 562, 160 USPQ 832 (1969), reversed the district court's finding of contempt because it had confined its analysis to the injunctive order and found infringement without considering the scope of the prior art. In *Ransburg* the Fourth Circuit allowed the district court on remand to consider newly discovered prior art. In *Marston v. J.C. Penney Co.,* 324 F.Supp. 889, 170 USPQ 25 (E.D.Va.1971), *aff'd on the opinion of the district court,* 469 F.2d 694, 176 USPQ 193 (4th Cir.1972), the court applied *Ransburg* to hold that proceedings on a contempt motion need not be summary, and that "[e]quivalency must be determined with reference to the patented structure, rather than the articles earlier found to infringe, for the injunction grants no

rights that the patent did not confer." *Id.* at 893, 170 USPQ at 29.

Most circuits have favored a middle ground granting discretionary authority in the trial court to determine how much relitigation may be required in the interest of justice. In *Universal Match Corp. v. New Castle Products, Inc.,* 308 F.2d 842, 843, 135 USPQ 142, 143 (7th Cir.1962), that court applied the doctrine of equivalents in comparing the modified devices with the patent claims rather than with the prior adjudicated infringing device. *See also Baltz v. The Fair,* 279 F.2d 899, 903, 126 USPQ 87, 90 (7th Cir.1960), wherein the court held that it was within the discretion of the trial court to determine whether the charge of infringement should be adjudicated in a contempt proceeding or in a separate infringement action. But subsequently in *Panther Pumps & Equipment Co. v. Hydrocraft, Inc.,* 566 F.2d 8, 18, 196 USPQ 81, 88 (7th Cir.1977) (Markey, C.J., sitting by designation), *cert. denied sub nom. Beck v. Morrison Pump Co.,* 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978), the court viewed the issue to be "whether the SPRAYMATE B is an *equivalent* of the infringing SPRAYMATE pump" in light of an earlier injunction that defined " 'infringing product' as, *inter alia, 'any* colorable *imitation* or *equivalent* thereof, *including,* but not limited to, *the product identified * * * as Defendants'* "SPRAY MATE PUMP" ' " [emphasis in original].

Some courts that have compared the modified device to the patent claims have not deemed it necessary to go beyond the claims or to review the prior art when determining equivalence in a contempt proceeding. *Wadsworth Electric Mfg. Co. v. Westinghouse Elec. & Mfg. Co.,* 71 F.2d 850, 851–52, 22 USPQ 194, 196 (6th Cir. 1934). As expressed in *Panduit Corp. v. Stahlin Bros. Fibreworks, Inc.,* 338 F.Supp. 1240, 172 USPQ 650, (W.D.Mich. 1972), *aff'd,* 476 F.2d 1286, 178 USPQ 12 (6th Cir.1973), the question of infringement required the court to focus on two issues: "(1) the equivalency of the modified structures to the structures previously held in-

fringing and (2) the relationship of the new devices to the valid patent claim." *Id.* at 1241–42, 172 USPQ at 651.

In *E–I–M Co. v. Philadelphia Gear Works, Inc.,* 223 F.2d 36, 41, 105 USPQ 402, 405 (5th Cir.1955), *cert. denied,* 350 U.S. 933, 76 S.Ct. 304, 100 L.Ed. 815, 108 USPQ 456 (1956), the Fifth Circuit authorized limited review of prior art, "not on the settled issue of validity, but solely on the critical question of equivalency between the modified and adjudicated structures."

The Eleventh Circuit in *Sure Plus Mfg. Co. v. Kobrin,* 719 F.2d 1114 (11th Cir. 1983), stated that in a contempt proceeding "a court should first determine whether there is more than a colorable difference between the modified device and the enjoined device." 719 F.2d at 1118. It defined a "more than colorable difference" as "one that gives rise to some fair ground for doubt that the modified product is within the scope of the injunction." *Id.* In determining whether the difference was more than colorable the court applied the test of the doctrine of equivalents, citing the *Interdynamics* decisions and equating equivalence with colorable difference. The court stated that "it was necessary for the district court to compare the modified assembly to the infringing assembly, while bearing in mind its previous construction (during the infringement litigation) of the [patent] claims ... and the scope of their protection." *Id.* Then, if there were such "fair ground of doubt" (i.e., more than a colorable difference) litigation of the infringement question was required.

The competing interests which require accomodation are reflected in this variety of judicial approaches to balancing the rights of a party who has already achieved a favorable judgment, against the rights of a person to "invent around" and avoid a patent it had earlier infringed. In almost all cases, the procedure followed by the court bears a plain relation to the facts of the particular case.

I would avoid setting a doctrinaire standard, and I would preserve a broad discretion in the trial court to adapt enforcement of its judgments to the variety of factual situations which may arise. The majority opinion weighs against the view expressed by the Sixth Circuit in *Schlegel Mfg. Co. v. USM Corp.,* 525 F.2d 775, 783, 187 USPQ 417, 423 (6th Cir.1975), *cert. denied,* 425 U.S. 912, 96 S.Ct. 1509, 47 L.Ed.2d 763, 189 USPQ 384 (1976):

> In essence this appeal involves a very important principle, namely whether sanctity should be accorded to a consent decree of a Federal Court in a patent-infringement case.
>
> \* \* \* \* \* \*
>
> We ought to do nothing here to make the settlement of a patent-infringement action by consent decree a futile, meaningless gesture which will discourage such settlements in the future.

The preservation of judicial authority requires that "[t]he burden of avoiding infringement at the risk of contempt falls on the one enjoined", *Smith Int'l, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1581 n. 8, 219 USPQ 686, 691 n. 8 (Fed.Cir.1983). "The attempt to see how near one can come to an infringement and escape it involves great danger, and is not looked upon with favor by courts." *Calculagraph Co. v. Wilson,* 136 Fed. 196, 199 (C.C.D.Mass. 1905). Substantial discretion must be permitted to the trial court to determine the extent of further proceedings.

### III.

The majority view makes it harder for a court to invoke the summary procedures by which courts normally enforce their judgments. In the case before us, the majority directs the district court on remand "to reconsider whether, under the standard set forth herein, infringement with respect to the ULTRA–LOK devices should be tested in contempt proceedings" or some other way—presumably a full infringement trial. However, the "standard set forth herein" requires so thorough a legal reanalysis that it does not accommodate simple procedures.

The majority states that determination of whether to conduct a contempt proceeding

is discretionary with the trial judge, but does not provide guidance as to what the majority considers would be an abuse of that discretion. In *MAC Corporation of America v. Williams Patent Crusher & Pulverizer Co.*, 767 F.2d 882, 226 USPQ 515 (Fed.Cir.1985), this court affirmed that it is within the discretion of the district court to decide not to handle a contempt case summarily, when the modified device is so changed that it raises a "fair ground of doubt" as to whether the injunction was violated. I agree.

In the case before us, the district court has already held that the devices were "merely colorably different" and that the court was free of a "fair ground of doubt", yet the majority appears to reject the district court's decision that the case could be handled in a contempt proceeding. Thus it is not clear on what basis the majority wants the district court to reconsider what sort of proceeding to conduct. The majority states that it gives appropriate deference to the discretionary authority of the trial court, yet also criticizes the "summary" contempt proceeding. The only clear holding is that it will be more difficult to enforce a judgment of patent infringement against a contemnor. This increased difficulty serves no public policy articulated by the majority.

The majority's reason for vacating the decision below is "the refusal of the district court to consider whether the Jones UL-TRA–LOK devices infringed the claims of the '217 patent," stating that "the court cannot avoid looking at the claims of the patent". The majority cites in support *Hopp Press, Inc. v. Joseph Freeman & Co.*, 323 F.2d 636, 139 USPQ 141 (2d Cir. 1963). That case makes no mention of patent claims, and the court found contempt on applying the same test for equivalency that the majority disapproves in *Interdynamics* and disapproves in the case at bar. Similarly the case of *Coleman Co. v. Holly Mfg. Co.*, 269 F.2d 660, 122 USPQ 559 (9th Cir.1959), relied on for this same proposition, upheld the trial court's analysis of the material effect of the modification on the "efficiency and operation of appellant's models in suit"; there is not a

word about patent claims. Both of these cases followed the law and procedure that the majority rejects.

I do not share the view that the district court "interpreted *Interdynamics I and II* as precluding any consideration of the issue of infringement". The district court said that "[u]nder *Interdynamics* I and II, contempt is found if the defendants' new alleged infringing device is 'merely colorably different' from the admittedly infringing device." *KSM Fastening Systems, Inc. v. H.A. Jones Co.*, No. 79–1350 slip op. at 2 (D.N.J.1984). This did not "preclude" consideration of infringement; it merely stated the Third Circuit's test for infringement in a contempt proceeding. The requirement that the district court must always make an express finding of "infringement" is, in this case, purely semantic.

I believe that the district court must retain the discretion to decide whether, for a particular modified device, a simplified contempt procedure will better serve the interest of justice. The majority has eased the way to enabling an adjudged infringer to oblige a court to retry any colorable modification the infringer can create, with fresh consideration of prior art and prosecution history, renewed claim interpretation, and the trappings of discovery and expert witnesses that accompany trial of these issues. By thus reducing the discretionary possibility of summary relief in contempt proceedings, harassing litigation will be harder to control.

The district court found that the Ultra-Lok device was "merely colorably different" from the Thermal-Lock device. The court observed:

> The court does not believe that Jones has taken a "new route" to invent around the KSM patent it infringed. Any differences to which Jones draws the court's attention are either irrelevant to the determination which the court must make or, if relevant, are either not supported by the evidence or insignificant.

In reaching this conclusion the court relied on its finding that the devices were "equivalent".

I agree that when it is necessary to invoke the doctrine of equivalents to determine whether a modified device is in violation of an injunction against infringement, this may raise a fair ground of doubt as to whether differences between the devices are "merely colorable". It is then proper to review the claims, the specification, and the prosecution history if appropriate in the specific circumstances, with due regard to matters that are *res judicata* between the parties. If on remand infringement is found, literally or by equivalents, contempt is an appropriate remedy.