**MICHAEL FOODS, INC., and North Carolina State University, Plaintiffs,**

v.

**BARTOW FOODS, INC., Defendant.**

**No. 90–269–CIV–T–17(A).**

United States District Court, M.D. Florida, Tampa Division.

Nov. 5, 1993.

James D. Myers, Bell, Seltzer, Park & Gibson, P.A., Raleigh, NC, Jonathan Charles Koch, Jonathan C. Koch, P.A., Tampa, FL, for plaintiffs.

V.J. Benincasa, Jr., Bartow Food Co., Bartow, FL, David Lee Partlow, John Blain Gibbons, Gibbons & Partlow, P.A., Tampa, FL, for defendant.

## MODIFIED[1] ORDER ON PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO SHOW CAUSE WHY IT SHOULD NOT BE HELD IN CONTEMPT

KOVACHEVICH, District Judge.

### INTRODUCTION/OVERVIEW

On January 8, 1993 Plaintiffs filed a MOTION TO COMPEL DEFENDANT TO

---

**1.** The Court initially ruled on the motion at bar on October 6, 1993. Plaintiffs subsequently filed a Motion For Correction Of The Court's October 6, 1993 Order. In order to avoid any confusion

SHOW CAUSE TO THE COURT AS TO WHY IT SHOULD NOT BE HELD IN CONTEMPT. In this motion Plaintiffs allege that Defendant is violating the Court's June 29, 1992 ruling. This order enjoins Defendant from infringing on Plaintiffs' patent, number 4,808,425 ('425). In a series of motions Defendant alleged that it had added a vacuum process to the beginning of its prior process (which was formerly adjudicated as infringing). Defendant further alleged that this vacuum process caused the thermal treatment to result in coagulation, and soluble protein loss (SPL) greater than 5%. As a result the Defendant asserts the new process does not violate the wording of the adjudicated claims. Plaintiffs argue, on a totally theoretical basis, that the vacuum process made the new process merely colorably different, and hence still infringed. Furthermore, Plaintiffs present expert testimony that *theorizes* that the new process could not cause coagulation, or affect the SPL as described by Defendant. This theory, though interesting, does not establish by even a preponderance of the evidence that Defendant's allegations are incorrect. Defendant has offered evidence of tests run at the National Food Laboratory which show that the SPL *of the product* is around 36%. As Plaintiffs point out, however, it is the SPL, and coagulation, resulting from the thermal treatment [2] which is significant. This is a direct result of the wording of the claims at issue. These claims are 3, and 15 through 20 of the '425 patent. Hence, a substantial question of fact still remains. It must be determined whether the thermal treatment in Defendant's new process, cause coagulation, or SPL greater than 5%. Therefore, Plaintiffs have failed to show by clear and convincing evidence that Defendant should be held in contempt of Court, and the motion is denied.

## I.  *FACTS/PROCEDURAL HISTORY*

A.  On June 29, 1992 a judgment was entered by this Court adjudicating that Defen-

dant's prior process infringed on claims 3, and 15 through 20 of Plaintiffs' '425 patent. Furthermore, the judgment enjoined Defendant from engaging in utilizing any process which would infringe upon the rights of Plaintiffs under the '425 patent.[3]

The process involved in the '425 patent is a new process for ultrapasteurizing liquid whole eggs (LWE). In particular the new process uses a continuous linear flow whereby the LWE product is exposed to a thermal treatment which results in less than 5% SPL to the LWE product. This is a significant improvement over previous processes, and allows for the combination of extended shelf life and less SPL, which is necessary for the creation of light pastries and other similar baked goods. Previous processes would not allow for such low SPL *and* an extended shelf life.

B.  On September 22, 1992 Plaintiffs filed a certificate of nonconcurrence, along with a Motion, and Memorandum in support thereof, to Compel for Determination of Sufficiency of Answers.

At this time Plaintiffs were seeking discovery regarding Bartow Food Company's (hereafter, Bartow) new process in order to determine if it also infringed on the patent. Since Bartow had not changed the manner in which it was marketing or labeling the product, and because Bartow had not received permission from the U.S.D.A. to ship under a new process Plaintiffs had reason to believe the new process was not colorably different from the previous process.

C.  On October 9, 1992 Bartow responded to the certificate of nonconcurrence, and filed a memorandum in opposition to the motion to compel.

On several grounds, including Client–Lawyer confidentiality, Defendant refused to answer Plaintiffs' interrogatories.

D.  On November 30, 1992 (after a hearing had been held) the Court entered an order

---

that might arise as a result of one order referencing the other this Order completely replaces that previous Order.

**2.**  The term "thermal treatment" will be used herein to mean the means of exposing the liquid

whole egg product to a predetermined temperature, for a predetermined time.

**3.**  See the following discussion on the law, and the appropriate scope of the injunction. Fed. R.Civ.P. 65.

granting in part, and denying in part Plaintiffs' motion to compel.

E.   On January 8, 1993 Plaintiffs filed the motion and supporting memorandum currently at issue, a motion to compel Defendant to show cause why Defendant, Bartow Foods, Inc., should not be held in contempt of the Court's June 29, 1992 judgment.

In this memorandum Plaintiffs claimed that Bartow was violating paragraph 5 of the judgment by utilizing a process that infringes on the '425 patent rights of Plaintiffs. Furthermore, Plaintiffs claimed:

1.   that the fact that the U.S.D.A. had given new authorization for the new process was dispositive proof of such infringement.

2.   that each of the elements in the charts [4] from trial was still present in the new process.

3.   that because every limitation of the '425 patent claims were found in the new process, Bartow was infringing on Plaintiffs' 425 patent rights.

4.   that the use of a prior art step is insufficient to avoid infringement.

5.   that Bartow's vacuum step will actually reduce SPL, and coagulation resulting from the thermal treatment, and not increase it above 5% as claimed by Bartow. This is based on the research of the original researcher (Ballas) on which the vacuum process was based, and expert testimony. There is no evidence, however, that the SPL resulting from thermal treatment after a vacuum process was ever tested empirically.

6.   that Bartow cannot introduce new SPL figures now because that issue was litigated at trial.

7.   that claim 5 of the '425 patent does not include the SPL limitation found in claims 3, and 15–20.[5]

F.   On January 25, 1993 Bartow filed a memorandum, and supporting documentation, in opposition to Plaintiffs' motion to show cause why Defendant should not be held in contempt of Court.

In this memorandum Bartow argues that the new process does not infringe upon Plaintiffs' rights under the '425 patent because the SPL is greater than the 5% required in claims 15–20. Furthermore, Bartow argues that its new process causes coagulation, and hence does not infringe claim 3 of the '425 patent [6]. In arguing this Bartow states:

1.   the new vacuum process increases the SPL of the product to approximately 36%.

2.   that the claims of the Ballas patent, that the vacuum process would reduce coagulation, are based on the notion that because of using the vacuum process the temperature applied to the LWE product could be lowered. In this case Bartow, in order to continue complying with its U.S.D.A. approval, continued to apply the same temperature to the LWE product even after the vacuum process was added.

3.   that U.S.D.A. requirements should not be confused with patent requirements.

4.   that the Court must compare the present process with the claims of the patent, and not just look at the changes made to the infringing process.

G.   On February 1, 1993 Plaintiffs filed a motion with supporting memorandum in opposition to Defendant's motion in opposition to Plaintiffs' motion to compel Defendant to

---

**4.**   These are Plaintiffs' exhibits 2a through 2f from trial. They correspond with claims 3, and 15 through 20 accordingly.

**5.**   Since this claim was not adjudicated at trial it is not properly the subject of contempt proceedings. See the discussion *infra*.

**6.**   This Court does not express an opinion as to the validity of Plaintiffs' assertion that claim 3 of the '425 patent does not require an SPL less than 5%. Plaintiffs assert this in their Motion For Correction Of The Court's October 6, 1993 Order. Specifically, this Court is concerned that this argument *might* be inconsistent with arguments made by Plaintiffs at trial wherein the claim was held to be valid. As a result, if the Plaintiffs argued, in their argument regarding validity of the '425 patent, that claim 3 required less than or equal to 5% SPL, then Plaintiffs should be estopped from arguing to the contrary now.

show cause why Defendant should not be held in contempt of Court.

Here Plaintiffs attempt to rebut Bartow's response by stating:

8. that it is the SPL resulting from the *thermal treatment* that is at issue, not the SPL of the product (which could have come from causes other than the thermal treatment).

9. that Bartow confuses the issue by trying to equate 15% SPL with coagulation when they are two separate results.

10. that the thermal treatment which was found to infringe has not changed, therefore the SPL resulting from the thermal treatment has·not changed.

11. that the Ballas patent hypothesizes that the vacuum process will reduce the amount of coagulation.

12. that the finding of 36% SPL is hearsay and inadmissable as such, and that there are no details regarding the circumstances in which such samples were taken. Hence, the evidence, even if admissible, is not empirically valid.

H. On February 16, 1993 Bartow filed a motion opposing the February 1, 1993 motion of Plaintiffs.

In particular Defendant:

5. requests an evidentiary hearing, and cites F.R.C.P. 63.[7]

6. argues that there is no rule to provide for post judgment discovery in circumstances as found in this case where Plaintiffs cannot seek to recover money damages.

## II. *DISCUSSION/APPLICATION*

The sole issue before the Court is whether Defendant, Bartow Food Co. is violating this Court's June 29, 1992 judgment, and should be held in contempt as a result. Such judgment at paragraph 5 enjoins Defendant from infringing on Plaintiffs' '425 patent. In keeping with Fed.R.Civ.P. 65, and *KSM Fasten-*

*ing Systems, Inc. v. H.A. Jones Company, Inc.,* 776 F.2d 1522 (Fed.Cir.1985), the scope of this injunction will be construed to prevent Defendant from infringing in such manner as was adjudicated at trial to infringe. Hence, only claims 3, and 15–20 of the '425 patent will be considered *for the purposes of these contempt proceedings.*

▮ Contempt proceedings are available for patent infringement only where there are no substantial issues to be litigated. *KSM,* at 1532. In particular, where there are issues of fact to be determined which require expert or other testimony, contempt proceedings are not appropriate. *KSM,* at 1531. Where, however, such disputed issues are not present, contempt proceedings may be appropriate. In such cases, it is the movant's burden to show by clear and convincing evidence 1) that the defendant has violated the lawful injunction of the Court, and 2) that the defendant has infringed on the adjudicated claims of the patent. It is insufficient simply to show that the defendant has violated the injunction. Infringement must also be found. *KSM,* at 1532. Hence in the case at bar, Plaintiffs·must show that there are no substantial disputed issues, and prove by clear and convincing evidence that the new process does infringe.

▮ The following discussion of Plaintiffs' and Defendant's arguments shows 1) that there is a substantial factual issue yet to be resolved, and 2) that as a result of the remaining factual issue being unresolved, the Plaintiffs have failed to meet their burden of proof by clear and convincing evidence, as required in contempt proceedings. In particular, the Plaintiffs failed to show that Bartow's new process: a) causes less than or equal to 5% SPL as a result of the thermal treatment, *or* b) does not result in coagulation of the LWE product.

▮ Plaintiffs note that Defendant failed to obtain new authority from the U.S.D.A. for its new process. Furthermore, Plaintiffs argue that such fact is dispositive proof that the new process infringes. This, however, as

---

7. Since Plaintiffs' motion at bar is denied Defendant's request for an evidentiary hearing is denied as moot. Defendant will get a chance to present evidence if Plaintiffs choose to pursue this motion further through a new or supplemental complaint.

Defendant argues, is not persuasive. The reverse logic might be applicable. Had Bartow applied for and received new permission from the U.S.D.A. for the new process, that would show that they probably had changed their process significantly. However, the failure of Bartow to receive such permission at most is evidence that Defendant failed to follow other regulations. It does not compel the conclusion that Defendant is infringing Plaintiffs' patent.[8]

Plaintiffs further argue that all of the elements in the charts from trial are still present in the new process. As a result, Plaintiffs assert that the new process infringes. The charts are simply a compilation of the elements of the patent claims, and were accepted as such by this Court at trial.

■ It is the wording of the *claim* itself which establishes the scope of the patent holder's rights. There is no right to exclusive use of any process which does not include *all* of the elements of the claim. *Universal Oil Products Co. v. Globe Oil & Refining Co.,* 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399 (1944); *Uniroyal, Inc. v. Rudkin–Wiley Corporation,* 837 F.2d 1044 (Fed.Cir.1988); *Texas Instruments, Inc. v. United States International Trade Commission,* 805 F.2d 1558 (Fed.Cir.1986); *Texas Company v. Anderson–Prichard Refining Corporation,* 122 F.2d 829 (10th Cir.1941). The reverse logic is not true, however. That is, to say that where the claim does not include all of the elements of the process there is no infringement, is false. The test is whether the process at issue contains all of the elements

of the claim. Hence, in order for the new process to infringe it must include *all* of the elements of any one of the adjudicated patent claims.

In arguing this, which is valid *law,* Plaintiffs ignore the two *facts* which are of key importance. First, The SPL of the LWE resulting from the thermal treatment in the new process has not been determined to be less than or equal to 5%. Second, Plaintiffs failed to demonstrate that Bartow's new process does not result in coagulation. *Since each of the claims at issue*[9] *require one of these two situations to exist, such existence must be shown by clear and convincing evidence.* Plaintiffs have failed to meet their onerous burden on this point.[10] In particular, Plaintiffs rely on findings from the Ballas patent from which Bartow gets its vacuum process. Plaintiffs also rely on other expert testimony which, without obvious empirical support claims that the vacuum process would reduce the SPL. Defendant, on the other hand, presented a counter argument also based on the Ballas patent, and provided some tests which show the SPL *for the product* to be approximately 36%.[11] The Court finds these arguments to be persuasive enough to prevent the very speculative evidence of Plaintiffs to rise to the level of clear and convincing.[12]

■ Plaintiffs argue that use of a prior art step before the process which was previously found to infringe is insufficient to avoid infringement. This is a valid general principle of law. *W.L. Gore & Associates, Inc. v.*

---

**8.** The Court expresses no opinion as to whether the failure of Defendant to obtain new approval from the U.S.D.A. constitutes a violation of laws outside the patent laws now at issue.

**9.** That is claims 3, and 15–20.

**10.** Plaintiffs, however, very well may file a supplemental, or new complaint at which time the level of proof required will be simply a preponderance of the evidence.

**11.** Plaintiffs argue that the test results on which Defendant relies for this finding are hearsay, and unreliable. As to the hearsay argument, it is dismissed summarily under Fed.R.Evid. 1101(b) which clearly states that in summary contempt hearings the normal rules of evidence do not apply. *See KSM,* at 1524 for authority that this type of proceeding is summary. As to the relia-

bility of the test, Plaintiffs have presented questions which need to be answered before the test could be accepted by the Court as wholly true. In this case, however, Defendant only need use the evidence to create sufficient doubt such that Plaintiffs' evidence does not meet the clear and convincing standard.

**12.** As a practical matter it would serve the interests of all concerned if Plaintiffs and Defendant would cooperate and perform tests on the new system to determine the SPL *resulting from the thermal treatment* under this new system, and whether this new system results in coagulation of the LWE product. The court finds today that these are the sole facts necessary to determine whether the new process infringes.

*Garlock, Inc.,* 842 F.2d 1275 (Fed.Cir.1988). In stating this, however, Plaintiffs ignore the fact that this is true only if the previously adjudicated process is unaffected by the prior art step. In particular, Defendant may be found in contempt only if the new process *actually infringes,* or is found to be only colorably different.[13] *KSM,* at 1526. In the case at bar there is serious doubt as to the effect the prior art step has on at least one element of each claim, i.e. whether the SPL is still less than or equal to 5%, or whether the new process causes coagulation. Hence, this argument is legally insufficient inasmuch as Plaintiffs have failed to prove infringement by clear and convincing evidence.

Additionally, this shortcoming causes the matter to be improper for contempt proceedings since it is a substantial issue of fact which must be resolved before the Court can determine whether or not the new process infringes. It is evident based on the documents submitted by the parties that this issue is not one which is likely to be resolved through motions and memoranda.[14] As a result, testimony, and cross examination are required to determine this issue, and it is not properly the subject of contempt proceedings. *KSM,* at 1531.

Under Plaintiffs' arguments Defendant is precluded from arguing that the thermal process in its new system causes more than 5% SPL, since it was adjudicated at trial that the same apparatus produced equal to or less than 5% SPL. This is simply not the case. What was adjudicated at trial was that the *old system,* without the use of the new vacuum process, caused less than or equal to 5% SPL. Since the new system has introduced a vacuum process prior to the adjudicated apparatus, it is reasonable to conclude that the LWE product might not be the same as what was being passed through the apparatus at trial. As a result the fact that the product passing through the thermal treatment apparatus might have changed from that which was adjudicated at trial prevents the application of the doctrines of res judicata, or collateral estoppel. Hence, Defendant is *not* precluded from arguing the SPL, under the new process, is greater than 5%.

Finally, Plaintiffs argue that it is the SPL *resulting solely from the thermal treatment* which is at issue, and not the SPL of the product which is at issue. The language of the claims (3, and 15–20) is clear. In claims 15–20 [15], the language is substantially similar to claim 18 which reads in part

> "wherein said holding temperature and holding time are selected to cause a soluble protein loss of not more than 5% from said *product* . . ."

*Emphasis added.* In claim 3 the language is similar, but in place of requiring an SPL less than 5%, the claim requires that the product not coagulate as a result of the thermal treatment. This strongly indicates that it is the SPL to the resulting product which is at issue, and not just the SPL from the thermal treatment. A closer look at the claims, however, reveals that the term "product" is used to mean the product which is being heated, subjected to turbulence and basically manipulated by Plaintiffs' apparatus. It is not used solely to mean the *resulting* product. Rather it is used to mean the substance as a whole (i.e. the product of egg whites, and yolks combined) as it passes through the apparatus. Hence, under the language of the above claim, Plaintiffs must show either that the SPL *from the thermal treatment* of Defendant's process is less than 5%, *or* that the *thermal treatment* does not cause coagulation, in order to find an infringement. To determine the SPL in particular, this requires determining the SPL which occurs (if

13. The "colorably different" test adopted by the Federal Circuit in *KSM* is the substantial disputed issues test previously described. Prior to *KSM* there was much confusion as to when a process or device was merely "colorably different." In order to avoid further confusion and discrepancies in application the Federal Circuit adopted this substantial disputed issues test.

14. *See* footnote 12, and comments following.

15. It is unclear at this point whether claim 3 requires the SPL of the product to be less than 5%. *See* Footnote 7 *supra.* Nevertheless, claim 3 does require that the product not coagulate as a result of the thermal treatment. Hence, as with claims 15–20 there is a substantial issue yet to be resolved.

any) prior to the thermal treatment.[16] Then, immediately subsequent to the thermal treatment, the SPL must once again be determined. This will provide the empirical data necessary to show whether or not Defendant's new process is infringing.

Without evidence that at least approaches this, Plaintiffs cannot be said to have met their burden of proving infringement by clear and convincing evidence. Furthermore, there are at least two substantial issues of fact remaining to be resolved, and as such, the issue is not appropriate for contempt proceedings. Additionally, Defendant's argument regarding the unavailability of discovery under Fed.R.Civ.P. 69 is dismissed as to discovery that has already been had. Inasmuch as Defendant has failed to object to such discovery in a timely fashion it has waived any right to such defense.[17]

As a result of the foregoing, it is **OR-DERED** that Plaintiffs' Motion to Show Cause Why Defendant Should Not be Held in Contempt of Court is **DENIED.**

**DONE** and **ORDERED.**

---

**16.** If the vacuum process is creating SPL it must not be allowed to factor into the determination.

**17.** No ruling as to the applicability of this argument for further discovery is expressed at this time. Defendant must raise any relevant and valid objections at that time.