57 F.Supp.2d 681 (1999)
ARMAMENT SYSTEMS & PROCEDURES, INC., Plaintiff,
v.
DOUBLE 8 SPORTING GOODS CO., INC., and Double 8 Trading Company, Inc., Defendants.
Civil Action No. 95-C-0400.
United States District Court, E.D. Wisconsin.
July 2, 1999.
*682 Bruce C. O'Neill, Fox, O'Neill & Shannon, Milwaukee, WI, Richard S. Kuhlman, Wolin & Rosen, Chicago, IL, Wanda E. Jones, Cappas & Jones, Highland, IN, James M. McCarthy, Bradley J. Hulbert, McDonnell Boehnen, Hulbert & Berghoff, Chicago, IL, for plaintiff.
Mitchell P. Novick, Attorney-at-Law, Montclair, NJ, for defendant Double 8 Trading Co.

ORDER

1) FINDING DEFENDANT DOUBLE 8 TRADING COMPANY, INC., IN CIVIL CONTEMPT FOR VIOLATING THE COURT'S OCTOBER 13, 1995 CONSENT JUDGMENT AND ORDER,

2) GRANTING PLAINTIFF'S MOTION TO COMPEL, and

3) ESTABLISHING SCHEDULE FOR FUTURE PROCEEDINGS
REYNOLDS, District Judge.

I. INTRODUCTION
This patent infringement action has been awakened from a nearly four-year dormancy. Before the court are two motions by plaintiff Armament Systems & Procedures, Inc. ("ASP"), one to find defendant Double 8 Trading Company, Inc. ("Double 8 Trading"), in civil contempt for violating a consent judgment issued by the court on October 13, 1995, and the other to compel production of documents. The court conducted a hearing on ASP's motions on June 24, 1999. Pursuant to that hearing, the court grants ASP's motions and establishes a schedule for further proceedings.

II. MOTION FOR CIVIL CONTEMPT

A. Findings of Fact[1]
ASP manufactures steel expandable metal batons that are used primarily by law enforcement agencies. On April 14, 1995, ASP brought this patent infringement action against Double 8 Trading and a related company, Double 8 Sporting Goods Co., Inc. ("Double 8 Sporting Goods"). ASP accused the defendants of selling expandable batons that infringed three of ASP's patents. Those patents are: U.S. Patent No. 5,110,375 ("the '375 patent"), entitled "Baton Method of Heat Treating Expandable"; U.S. Patent No. 5,348,297 ("the '297 patent"), entitled "Expandable Baton With Locking Joints"; and U.S. Patent No. 5,161,800 ("the '800 patent"), entitled "Retainer Clip for Expanding Baton".
ASP's action was initially resolved with a minimum of court intervention: Double 8 Sporting Goods failed to answer the complaint and the court entered default judgment *683 against it on November 9, 1995.[2] Double 8 Trading, on the other hand, reached a settlement with ASP, and both parties stipulated to the entry of a consent judgment and order governing the resolution of their dispute ("the Consent Judgment"). Double 8 Trading's then-president, Daric Kwoc, signed the stipulation. The court issued the Consent Judgment on October 13, 1995.
Under the terms of the Consent Judgment, Double 8 Trading conceded that all three of ASP's patents are "valid and enforceable as between these parties." (Consent Judgment ¶¶ 2-4.) Double 8 Trading also conceded that it had infringed the '800 patent by selling steel expandable batons and steel spring batons incorporating the retaining[3] clip claimed in that patent.[4] The Consent Judgment prohibited Double 8 Trading and its agents, employees, officers, directors and shareholders, from directly or indirectly infringing the claims of all three patents. The Consent Judgment provided, however, that Double 8 Trading would be "relieved of its obligations under this Consent Judgment and Order ... in the event a final decision is rendered in any Court of competent jurisdiction that said U.S. Patents are invalid or unenforceable." (Id. ¶ 11.) The court retained jurisdiction over the action for purposes of enforcing compliance with the Consent Judgment.
The court did not hear from the parties again until this year. On March 17, 1999, ASP moved for an order finding Double 8 Trading, and its former president, Daric Kwoc, in civil contempt for violating the terms of the Consent Judgment. ASP alleged that on multiple occasions Double 8 Trading had violated the Consent Judgment by selling expandable batons that infringed all three of ASP's patents. Counsel for Double 8 Trading filed a notice of appearance on April 13. On April 22, ASP filed a motion to compel the production of documents and to schedule a deposition. On May 14, the court issued an order establishing a hearing date and briefing schedule for ASP's motions. The hearing took place on June 24.
ASP focuses its case primarily on alleged violations of the '800 patent covering the retaining clip. A little more than a year after the court issued the Consent Judgment, in December of 1996, ASP's chief executive officer, Dr. Kevin Parsons ("Dr.Parsons"), purchased two 16 inch steel expandable batons from Double 8 Trading. Those Double 8 Trading batons contained retaining clips that were similar to the retaining clip claimed in the '800 patent. The opposed legs of the retaining clips on the Double 8 Trading batons were tapered at the ends. In a letter dated March 25, 1997, counsel for ASP informed Double 8 Trading that ASP believed the sale of these batons constituted a violation of the Consent Judgment. (Mar. 17, 1999 Pl.'s Mem. of Law, Ex. H.) Counsel for Double 8 Trading responded in a letter dated April 11, 1997, and explained that any sales of infringing batons were inadvertent and possibly the result of "old stock" being accidentally sold. (Hr'g Ex. 6.) Counsel for Double 8 Trading assured ASP that his client would "take care to see that no old products are available for an accidental sale to occur." (Id. at 2.) Counsel for Double 8 Trading also stated that his client had been informed by its baton manufacturer that all batons sold by Double 8 Trading would use a retaining clip that did not infringe the '800 patent. (See id.) In an effort to resolve this dispute, Double 8 Trading agreed to redesign the retaining clip on its batons before any *684 future sales were made. (See Hr'g Ex. 8 at 1.) Double 8 Trading also agreed to send ASP a sample of the redesigned clip for pre-approval to ensure that the new clip did not violate the Consent Judgment. (Id. at 2.) Contrary to these representations, Double 8 Trading never provided ASP with a redesigned clip for pre-approval.
More than a year later, in July of 1998, Dr. Parsons noticed an advertisement for Double 8 Trading expandable steel batons in a catalogue distributed by a company named Smokey Mountain Knife Works ("Smokey Mountain"). The batons were described in the catalogue as "Double 8 Telescoping baton". (Hr'g Ex. 9.) Dr. Parsons ordered two Double 8 Trading batons from Smokey Mountain. Dr. Parsons inspected the batons and found that although the retaining clips had been redesigned, they were extremely similar to the retaining clips that had been held to infringe the '800 patent in the Consent Judgment.
In August of 1998, Dr. Parsons visited a trade show in Las Vegas. Double 8 Trading had a large exhibit at the show and the exhibit included a large display of expandable batons. Dr. Parsons examined the retaining clips on the batons and found no difference between those retaining clips and the retaining clips contained in the batons held to infringe the '800 patent in the Consent Judgment.
In February of 1999, Dr. Parsons again discovered Double 8 Trading batons offered for sale in the Smokey Mountain catalogue. The catalogue described the batons as "Double 8 Telescoping baton". (Hr'g Ex. 12.) On February 24, Dr. Parsons ordered two Double 8 Trading batons from Smokey Mountain. (See Hr'g Ex. 13.) Dr. Parsons inspected the retaining clips contained in the batons and found no difference between those retaining clips and the retaining clips found in the batons held to infringe the '800 patent in the Consent Judgment.
On April 9, 1999, counsel for Double 8 Trading and counsel for ASP had a phone conversation in which counsel for Double 8 Trading represented that his client had ceased the manufacture, sale, and shipment of expandable batons. Counsel for Double 8 Trading also agreed that within ten days he would confirm that Double 8 Trading's distributors did not have any inventory of Double 8 Trading batons and had stopped taking orders for such batons. The conversation between counsel for Double 8 Trading and counsel for ASP is memorialized in a letter dated April 9, 1999, from counsel for ASP. (See Hr'g Ex. 30.)
On April 14, 1999, Dr. Parsons again ordered Double 8 Trading batons from Smokey Mountain. (See Hr'g Ex. 14.) Again, Dr. Parsons found little difference between the retaining clips in these batons and the retaining clips in the batons found to infringe the '800 patent in the Consent Judgment. One of the batons ordered by Dr. Parsons on April 14 has been provided to the court as Exhibit 15.

B. Scope of the Court's Proceedings
The court intended to limit the scope of the June 24, 1999 hearing to the issue of whether there was more than a "colorable difference" between the newly-accused batons and the batons governed by the Consent Judgment. The Federal Circuit has held that "colorable difference" is a threshold issue in patent infringement contempt proceedings; contempt proceedings are not appropriate if there is more than a colorable difference between an accused device and the device identified as infringing in a consent judgment. See KSM Fastening Sys., Inc. v. H.A. Jones Co., 776 F.2d 1522, 1528-32 (Fed.Cir.1985). Admissions by Double 8 Trading prior to the hearing made evidence relevant to the "colorable difference" issue unnecessary and enabled the court to proceed to the issue of whether Double 8 Trading should be found in contempt.
In a letter brief submitted ten days after the filing deadline, and just three days *685 prior to the hearing, Double 8 Trading admitted that there is no colorable difference between the claims of the '800 patent and the retaining clips contained in the batons identified by ASP as having been sold in violation of the Consent Judgment. Double 8 Trading contended that, despite this admission, it could not be found in contempt because the '800 patent was invalid. With regard to the '297 patent and the '375 patent, Double 8 Trading contended that ASP had failed to present any evidence of violations of the Consent Judgment.
Double 8 Trading reasserted these arguments at the June 24 hearing. Representations made at the hearing by counsel for Double 8 Trading lead the court to conclude that Double 8 Trading admits there is no colorable difference between the retaining clips contained in the batons sold after entry of the Consent Judgment, the claims of the '800 patent, and the retaining clips contained in the batons held to infringe the '800 patent in the Consent Judgment. Double 8 Trading also argued that the terms of the Consent Judgment permit Double 8 Trading to contest the validity of the '800 patent in this proceeding. Double 8 Trading relied on the provision of the Consent Judgment stating that Double 8 Trading is relieved of its obligations under the Consent Judgment if an appropriate court finds ASP's patents invalid.
As discussed below, the court rejects Double 8 Trading's contention that it can contest the validity of the '800 patent in this proceeding. Because that was the only defense proffered by Double 8 Trading in its brief and proposed findings of fact and conclusions of law, the court found it appropriate to rule on ASP's contempt motion in its entirety.

C. Validity of the '800 Patent
In general, "[w]hether there is infringement may not be challenged in contempt proceedings on the basis that the patent is invalid. The validity of the patent is the law of the case in such proceedings." KSM Fastening, 776 F.2d at 1529. The court finds no reason to stray from that rule here. In stipulating to the terms of the Consent Judgment, Double 8 Trading agreed that the '800 patent was "valid and enforceable," and agreed not to directly or indirectly infringe that patent. The provision of the Consent Judgment relieving Double 8 Trading of this obligation in the event a court finds ASP's patents invalid does not grant Double 8 Trading permission to violate the Consent Judgment before such an finding is made.
The provision of the Consent Judgment raised by Double 8 Trading affords only prospective relief. The provision states:
[Double 8 Trading] shall be relieved of its obligations under this Consent Judgment and Order ... in the event a final decision is rendered in any Court of competent jurisdiction that said U.S. Patents are invalid or unenforceable.
(Consent Judgment ¶ 11.) Under the plain language of that provision, the obligations imposed on Double 8 Trading are not lifted until a court finds the patents invalid. The undisputed facts in this proceeding show that no court has issued a decision finding ASP's patents invalid, and yet Double 8 Trading admits to selling products that are not more than colorably different from the claims of the '800 patent itself. Double 8 Trading may be correct that the '800 patent is invalid, but Double 8 Trading must prove that contention before it can ignore the court's decree.
Moreover, reading the provision in the manner Double 8 Trading suggests would be poor policy. Giving res judicata effect to this type of consent decree increases the efficiency of patent litigation by encouraging parties to press their case when a patent's validity is legitimately in question, and encouraging parties to settle when it is not. See Foster v. Hallco Mfg. Co., 947 F.2d 469, 476-77 (Fed.Cir.1991). In addition, a consent decree does not merely impose obligations between the parties, it also imposes obligations to the court. Violation *686 of a consent decree constitutes an affront to the court. See KSM Fastening, 776 F.2d at 1524. If a party wishes to take actions that would violate the terms of a consent decree, it should request the court's leave to do so.
Double 8 Trading argues that it should not be barred from challenging the validity of the '800 patent in this proceeding because it did not have a full and fair chance to litigate the validity of that patent prior to signing the Consent Judgment. According to Double 8 Trading, it would not have agreed to the Consent Judgment had it known of the existence of prior art invalidating the '800 patent.
The court rejects this argument. There is nothing in the record to show that Double 8 Trading made any effort to contest ASP's claims. Double 8 Trading never filed an answer to ASP's complaint. No attorney filed a notice of appearance on Double 8 Trading's behalf prior to the signing of the Consent Judgment. The record suggests that Double 8 Trading found it more beneficial to quickly settle this action than to expend the time and effort required to mount a challenge to ASP's claims. Double 8 Trading cannot now argue that ASP denied it the chance to fully litigate this action when Double 8 Trading never sought to do so in the first place.

D. Infringement of the '800 Patent
To find Double 8 Trading in contempt for violating the Consent Judgment, the court must find that the batons Double 8 Trading sold infringe ASP's patents. The court finds there is insufficient evidence to conclude that Double 8 Trading's batons infringe the '297 patent and the '375 patent. However, sufficient evidence has been offered with regard to the '800 patent.
A copy of the '800 patent is attached to this order. In support of its argument that Double 8 Trading has been selling batons that violate the '800 patent, ASP has provided one of the batons purchased by Dr. Parsons from Smokey Mountain on April 14, 1999 ("Exhibit 15"), and the expert testimony of Albert V. Karvelis. In his testimony, Karvelis compared the claims of the '800 patent to the retaining clip found in Exhibit 15. The court has also conducted its own comparison of Exhibit 15 to the claims of the '800 patent. This evidence leads the court to conclude that Double 8 Trading infringed claims 1 and 4 of the '800 patent in violation of the Consent Judgment.

E. Duration of Double 8 Trading's Infringing Sales
ASP asserts that Double 8 Trading continues to sell batons that violate the Consent Judgment. The court finds there is insufficient evidence to show that Double 8 Trading continued to violate the Consent Judgment after April 9, 1999. On April 9, 1999, counsel for Double 8 Trading represented that his client had ceased the manufacture, sale, and shipment of expandable batons. On that same day, counsel for Double 8 Trading agreed that, within ten days, he would confirm that Double 8 Trading's distributors did not have any inventory of Double 8 Trading batons and had stopped taking orders for such batons.
Although Dr. Parsons purchased an infringing baton from Smokey Mountain on April 14, 1999, that sale occurred prior to the expiration of the ten-day deadline promised by Double 8 Trading. Thus, that sale could be the result Double 8 Trading not having had the opportunity to contact Smokey Mountain regarding the need to stop selling batons from its existing stock, rather than a product of a continuing violation on the part of Double 8 Trading. On the current record, the court cannot find that Double 8 Trading violated the Consent Judgment after April 9, 1999. However, sales of Double 8 Trading batons made by Double 8 Trading distributors and retailers after April 9, 1999, may be relevant to the calculation of the proper remedy for Double 8 Trading's contempt.

*687 F. Double 8 Trading's Former President Daric Kwoc
ASP has moved that Double 8 Trading's former president, Daric Kwoc ("Kwoc"), also be found in civil contempt for his role in violating the Consent Judgment. Counsel for Double 8 Trading has represented to the court that Kwoc is no longer employed by the company. There is nothing in the record suggesting that ASP personally served Kwoc with its motion. No attorney has filed a notice of appearance for Kwoc, and Kwoc was not present or represented at the hearing. ASP has not produced evidence regarding Kwoc's role in violating the Consent Judgment. Given these facts, the court will deny ASP's motion as it relates to Kwoc. ASP is free to renew its motion as to Kwoc should it discover evidence implicating Kwoc in the violation of the Consent Judgment.

G. Conclusions of Law
In light of Double 8 Trading's admissions, the court finds there is no colorable difference between (a) the retaining clips contained in the batons sold by Double 8 Trading after entry of the Consent Judgment, (b) the retaining clips contained in the batons identified in the Consent Judgment as violating the '800 patent, and (c) the claims of the '800 patent itself.
The court finds there is insufficient evidence at this time to support a finding that Double 8 Trading violated the Consent Judgment with regard to the '297 and '375 patents.
The court finds that principles of res judicata bar Double 8 Trading from contesting the validity of the '800 patent in this proceeding.
Having compared the retaining clip contained in Exhibit 15 to the claims of the '800 patent, the court finds that Double 8 Trading has infringed claims 1 and 4 of the '800 patent in violation of the Consent Judgment.
The court finds that Double 8 Trading sold batons in violation of the Consent Judgment until April 9, 1999. Accordingly, the court will grant ASP's motion to find Double 8 Trading in civil contempt.
The court finds there is insufficient evidence to hold Daric Kwoc in civil contempt.

III. MOTION TO COMPEL
On April 22, 1999, ASP filed a motion to compel Double 8 Trading to produce various categories of documents and to schedule a deposition with a person designated by Double 8 Trading to discuss those documents. At the court's June 24 hearing, Double 8 Trading expressed its willingness to comply with ASP's discovery requests to the fullest degree possible. However, Double 8 Trading suggested that it may not have many of the records ASP seeks.
At the hearing, the court ordered that Double 8 Trading produce its president, Henry Lee, for a deposition on or before July 22, 1999. The parties agreed that on or before June 28, 1999, ASP would provide Double 8 Trading with a letter detailing the information it needs to prepare for that deposition. Double 8 Trading agreed to respond to ASP's letter on or before July 12, 1999. The court finds that the above agreements adequately address ASP's motion to compel.

IV. CONCLUSION
That portion of the March 17, 1999 motion by plaintiff Armament Systems and Procedures, Inc., seeking to find defendant Double 8 Trading Company, Inc., in civil contempt is GRANTED.
That portion of plaintiff's March 17, 1999 motion seeking to find Daric Kwoc in civil contempt is DENIED WITHOUT PREJUDICE.
The April 22, 1999 motion by plaintiff to compel the production of documents and to schedule a deposition is GRANTED.
*688 On or before July 22, 1999, defendant shall produce its president, Henry Lee, for a deposition by plaintiff.
On or before July 12, 1999, defendant shall respond to any written request plaintiff has made for documents or other information needed to prepare for the deposition of Henry Lee.
The court will conduct a hearing on Friday, September 10, 1999, at 10:00 a.m., to determine plaintiff's remedy for defendant's contempt.

APPENDIX A
 *689 *690 *691 *692

NOTES
[1] The court bases its findings of fact on the evidence presented at the June 24, 1999 hearing, the proposed findings of fact submitted by the parties, and the materials filed with the parties' briefs. Citations are provided for direct quotations and for facts supported by exhibits presented at the hearing. In general, citations are not provided for findings based on the parties' proposed findings of fact or hearing testimony.
[2] Double 8 Sporting Goods' current status is unclear. Counsel for Double 8 Trading asserts that the company is defunct.
[3] Although the '800 patent is entitled "retainer clip," the parties refer to it as a "retaining clip."
[4] A copy of the '800 patent is attached to this order as Appendix A.